**Ulla C. SLAGENWEIT, Petitioner,**

v.

**Steven P. SLAGENWEIT, Respondent.**

No. C93–187.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Oct. 28, 1993.

Robert M. Jilek, Webb L. Wassmer, Simmons, Perrine, Albright & Ellwood, Cedar Rapids, IA, for petitioner.

William F. Olinger, William F. Olinger Law Firm, Cedar Rapids, IA, for respondent.

## ORDER

MELLOY, Chief Judge.

The petitioner, Ulla C. Slagenweit ("Ulla") brings this petition pursuant to The Convention on the Civil Aspects of International Child Abduction done at the Hague on October 25, 1980 ("Convention"). The Convention was adopted by the International Child Abduction Remedies Act of April 29, 1988, codified at 42 U.S.C. § 11601, *et seq.* The respondent is petitioner's husband, Steven P. Slagenweit ("Steven"). The petition requests that the court order that the minor child of the parties, Sandra Slagenweit ("Sandra") be returned to the petitioner pursuant to the Convention and that the petitioner be awarded all reasonable costs and expenses. The petition was filed on August 6, 1993. The court held a full evidentiary hearing on this matter on October 22, 1993.[1] The court now sets forth its findings of fact, conclusions of law and discussion denying the petition.

### Findings of Fact

Ulla met Steven while Steven was stationed in Germany with the United States Army. Steven and Ulla were married on February 22, 1985, in Wiesbaden, Germany. The family consistently resided in Wiesbaden, Germany, until June, 1991. While residing in Germany, Steven and Ulla had three children. The youngest, Sandra, is the subject of this controversy. Sandra was born on April 15, 1990, which makes her currently 3½ years old.

In June, 1991, Steven quit his job in Germany and traveled to the United States in

---

1. Article 11 of the Convention requires the court to act expeditiously in proceedings for the return of children. Article 11 indicates that normally a hearing and decision on the merits of the dispute will be held and rendered within six weeks from the filing of the petition. In this case, the evidentiary hearing on the filing of the petition was delayed at the mutual request of the parties. This court indicated its willingness to hold a hearing and reach a decision within six weeks of the filing of the petition. However, the parties requested an opportunity to conduct discovery, directed principally to the issues of Sandra's current medical condition and treatment in Iowa, prior to the hearing. Consequently, an order was entered allowing for expedited discovery under the Federal Rules of Civil Procedure and setting the hearing for October 22, 1993.

order to obtain employment and further schooling. Steven gave Ulla approximately three weeks notice of his intent to travel to the United States. The evidence indicates that prior to June, 1991, the parties had been experiencing marital difficulties. When Steven decided to leave Germany in June, 1991, he and Ulla seriously discussed divorce, however, they agreed to try to make the marriage work. Both parties anticipated that Steven would eventually return to Germany.

Steven brought Sandra with him when he left Germany in June, 1991. Steven moved to Cedar Rapids, Iowa. Steven has resided continuously in Cedar Rapids since June, 1991. Pursuant to agreement of the parties, Sandra was returned to Germany in October, 1991, to reside with her mother.

In April, 1992, Ulla wrote to Steven indicating that she was finding it very difficult to handle the three children. Ulla was attempting to return to school and needed time to study for an entrance exam which was to be given in May, 1992. She requested that Steven come and pick up Sandra as soon as possible. Steven did not travel to Germany to pick up Sandra, however, Ulla did come to Iowa to visit Steven in July, 1992. Sandra accompanied Ulla to Iowa. Sandra was left in Steven's care when Ulla returned to Germany that same month. Sandra has resided with Steven since July, 1992.

It is undisputed that the decision to leave Sandra with Steven was by mutual agreement of the parties. One of the main reasons for leaving Sandra in the United States was to obtain medical consultation and treatment for Sandra. Sandra has been diagnosed as having grand mal epilepsy. Sandra's speech, motor skills, feeding habits, and other developmental functions are 12–24 months behind her chronological age. Sandra had shown significant progress while in the United States when she was with Steven in Iowa from June to October, 1991. Once Sandra was returned to Iowa in July, 1992, Steven had her evaluated at the Department of Pediatrics, Division of Developmental Disabilities, at the University of Iowa Hospitals and Clinics. The University of Iowa Pediatric Clinic has conducted periodic reviews of Sandra's condition. In addition, Sandra has been seen regularly by Pediatric Associates, P.C., in Cedar Rapids. Pursuant to the recommendations of the health care professionals, Sandra has received physical therapy through St. Luke's Hospital Physical Therapy Department. In addition, the Special Education Division of Grant Wood Area Educational Agency has given in-home assistance to Steven and his girlfriend. Currently Sandra is enrolled in the Grant Wood School for the developmentally disabled.

Since coming to the United States, Sandra has shown significant developmental progress. The evidence shows that Sandra has developed roughly at the rate of one month of development for each month of chronological age since she has begun receiving the services of the University of Iowa Pediatric Clinic, Pediatric Associates, P.C., Grant Wood Area Education Agency, and St. Luke's Physical Therapy Department. While Sandra still remains developmentally disabled, this rate of one month progress for each month of chronological age is significantly greater than the progress which had been shown while residing in Germany.

There is considerable dispute as to the intentions of the parties concerning Sandra's custody when she was left with Steven in July, 1992. Considering all the evidence and testimony, this court concludes that it was intended that Sandra remain with Steven for an indefinite period of time, however, it was also the understanding of the parties that Sandra would eventually return to Germany. No specific date for Sandra's return was set by the parties.

When Ulla came to Iowa with Sandra in July, 1992, Steven did not tell Sandra that he had established a relationship with another woman. In June, 1992, Steven met his current girlfriend. The fact of that relationship was kept from Ulla, in part, because Steven was afraid that if he told Ulla about the relationship Ulla would not leave Sandra with him when Ulla went back to Germany in July, 1992. Shortly after Ulla's return to Germany, Steven and his current girlfriend began living together. Steven's girlfriend has been very involved in providing care to Sandra and following through on the recommendations as to home health care.

In December, 1992, Steven's son, Robert, traveled from Germany to Iowa to visit Steven over the Christmas holidays. On December 19, 1992, Ulla called Steven at his residence to advise Steven of a medical emergency involving their other son, David, who had remained behind in Germany. Steven's girlfriend answered the telephone when Ulla called. Ulla confronted Steven about this fact and Steven admitted his relationship at that time. At about that time Steven also advised Ulla he was considering keeping Sandra on a permanent basis. He also indicated that he would give Robert the choice of staying with his father in Iowa or returning to Germany after the Christmas holidays. Robert decided to return to Germany and left Iowa in January, 1993, while Sandra remained behind.

Over the next couple months there were discussions back and forth between the parties about Sandra returning to Germany. Notes contained in the Grant Wood Area Education Agency Activity Reports indicate that Steven had a desire to keep Sandra, however, he was concerned about the cost of an international custody dispute. Eventually, Steven did agree to return Sandra to Germany and airline reservations were made for Sandra's return on February 25 or 26, 1993. However, the plane tickets were never actually purchased and Sandra did not return to Germany. There is a dispute between the parties as to whether the refusal to return Sandra in late February was due to Ulla's refusal to pay for the airline tickets, Sandra's chicken pox, or some other reason. Suffice it to say, Sandra has remained with Steven to this date.

On March 31, 1993, Steven filed a dissolution of marriage action in the Iowa District Court In and For Linn County. He advised Ulla of the filing of the divorce proceeding on the same day and also indicated his intention to seek permanent custody of Sandra. There was considerable testimony about whether this was Ulla's first indication that Steven was going to seek a divorce. However, the evidence shows that the marriage had gone through a number of difficult periods. There is also evidence through an affidavit of one of Ulla's friends that after Ulla found out about Steven's relationship with another woman in December 1992, that both Ulla and Steven agreed that they would get a divorce.

Ulla is contesting jurisdiction of the Iowa court over the marriage of the parties and has sought dismissal of the Iowa dissolution of marriage action. She has also commenced divorce proceedings in the German courts. There was considerable testimony about the status of the German legal action. However, the court does not consider the status of either the Iowa or German divorce proceedings to be of any significance in this dispute.

The return of Sandra to her mother in Germany would not pose any grave risk of harm. There was evidence that Sandra's return to her mother would pose some adjustment problems. Given Sandra's developmental deficiencies, there would be a period of confusion and a sense of loss. Sandra's developmental progress may be set back somewhat by the change to a German speaking culture after Sandra has been exposed to the use of the English language for the past 15 months. However, the evidence indicates that any period of adjustment would be temporary and should have no long lasting effect upon Sandra. Since Ulla speaks proficient English, this court has no reason to believe that Ulla would not do everything necessary to help Sandra make the transition from an English speaking country to a German speaking environment.

The evidence shows that Sandra would receive very adequate medical care in Germany. The German medical facilities and access to necessary medications are equal to those of the United States. In addition, Ulla has medical insurance through her employer which will cover Sandra. In that sense, Sandra may be somewhat better off in Germany since Steven currently has no medical insurance; Sandra is currently receiving health benefits through the Title XIX Program.

The parties agreed that Sandra has dual citizenship, that is, she is a citizen of both Germany and the United States. The parties also agreed that under both Iowa and German law the parents have joint rights of custody. No custody orders have been entered in any of the divorce proceedings pending in Iowa and Germany.

### Conclusions of Law and Discussion

■ The petition is brought pursuant to the Convention on the Civil Aspects of International Child Abduction. Both Germany and the United States are signatories to the Convention. The Convention "... establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained ... Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions as set forth in the Convention applies." 42 U.S.C. § 11601(a)(4). The petitioner, Ulla, has the burden of showing by preponderance of the evidence that the child, Sandra, has been wrongfully removed or retained within the meaning of the Convention.

Under Article 3 of the Convention, the retention of a child is wrongful where (1) it is in breach of the rights of custody attributable to a person under the law of the state in which the child was a habitual resident immediately before the removal[2] or retention, and (2) where the custody rights were being exercised by the petitioner. In this case, respondent argues that Germany was not the country in which Sandra was habitually resident before the alleged wrongful retention and that Ulla was not exercising her rights of custody.

■ As to the second argument of the respondent, the court finds that Ulla was exercising her rights of custody. Article 5 indicates that for purposes of the Convention, one of the rights of custody includes the right to determine the child's place of residence. Ulla was exercising her right of custody when she and Steven made the joint decision to leave Sandra with Steven in July, 1992. Thus, the court finds that Ulla has met her burden of showing that prong of the analysis.

■ This court concludes, however, that Ulla has failed to show by a preponderance of the evidence that Germany was Sandra's place of habitual residence prior to the alleged wrongful retention. It is somewhat unclear as to when the wrongful retention began. There is some evidence that Ulla and

Steven began discussing Sandra's permanent residence shortly after Ulla found out about Steven's relationship with his current girlfriend in December, 1992. However, Steven and Ulla did discuss Sandra's return to Germany in January and February, 1993. Steven did indicate that he would return Sandra in February, 1993, and in fact, a definite date for return was set. One of the reasons Steven gave to Ulla for keeping Sandra after Robert returned to Germany was continued medical treatment of Sandra and regulation of a new medication for Sandra's epilepsy. However, by March 31, 1993, when the divorce petition was filed, it was clear to all concerned that it was Steven's intent to keep Sandra on a permanent basis. The court will adopt the petitioner's argument that the date for measuring when the wrongful retention began is March 31, 1993.

The issue then becomes whether Sandra was a habitual resident of Germany or Iowa prior to March 31, 1993. This court concludes Sandra was a habitual resident of Iowa prior to that date. In determining habitual residency, "a court must look back in time, not forward ... Future plans are irrelevant to our inquiry." *Friedrich v. Friedrich*, 983 F.2d 1396, 1401 (6th Cir.1993). "To determine the habitual residence, the court must focus on the child, not the parents, and examine past experience, not future intentions." *Friedrich*, at 1401.

In defining habitual residence, a number of courts have indicated that the British courts have provided the most comprehensive analysis of this term. A number of courts cite the case of *In re Bates*, No. CA 122.2–89, High Court of Justice, Family Division Court, Royal Court of Justice, United Kingdom, 1989. See *Friedrich*, at 1401; *Levesque v. Levesque*, 816 F.Supp. 662, 666 (D.Kan.1993); *Ponath v. Ponath*, 829 F.Supp. 363 (Utah 1993). The *Bates* court is quoted in *Levesque*, at 666 as follows:

'... and there must be a degree of settled purpose. The purpose may be one or there may be several. It may be specific or general. All that the law requires is that there is a settled purpose. That is

2. It should be noted that this is not a case of wrongful removal. It is undisputed that it was

the joint decision of Steven and Ulla that Sandra remain with Steven in July, 1992.

not to say that the propositus intends to stay where he is indefinitely. Indeed his purpose while settled may be for a limited period. Education, business or profession, employment, health, family or merely love of the place spring to mind as common reasons for a choice of regular abode, and there may well be many others. All that is necessary is that the purpose of living where one does has a sufficient degree of continuity to be properly described as settled.'

This court concludes that Iowa became the habitual residence of Sandra. The parties mutually agreed that Sandra would remain in the custody of Steven for an indefinite period of time in Iowa. A change in habitual residence from Germany to Iowa must be the result of a change in geography and a passage of time. The change in geography must not be the result of a questionable removal of a child. *Friedrich,* at 1401–1402. In this case, there is no questionable removable; the parties agreed between themselves to have Sandra live with Steven. Likewise, there was a clear change in geography of Germany to Iowa. Furthermore, there was a substantial passage of time from the removal in July, 1992, to the beginning of the wrongful retention in late March, 1993. While Ulla intended that Sandra return to Germany at some future date, this court is convinced that no definite time for Sandra's return was set or discussed prior to the December 19, 1992 telephone call and that it was the mutual intent of the parties that Sandra stay be of an indefinite nature.

More importantly, Sandra became a habitual resident by her substantial involvement with her father, his girlfriend, the other primary care giver, and the Iowa medical community. Sandra has been seen on several occasions by the University of Iowa Clinics and Hospitals which has changed her to a new regimen of medications which has greatly helped to alleviate the frequency and severity of her seizures. Sandra has had regular contacts with her Iowa pediatrician. Physical therapy and home health care have been provided through St. Luke's Hospital and Grant Wood Area Education Agency. For a child suffering from the types of physi-cal and developmental problems experienced by Sandra, these are significant indicia of habitual residence. Sandra has very much become a resident of the Cedar Rapids community, with the consent of both parents, so that she could no longer be considered a habitual resident of Germany at the time of Ulla's demand for her return.

Consequently, Ulla's petition for return of Sandra must be denied. It must again be emphasized that the court is making no determination as to the ultimate fitness of either person to have temporary or permanent custody of Sandra. This court is only determining that under the applicable provisions of the Convention that return of Sandra to Germany is not mandated.

■ Although the court has determined that Ulla has failed to meet her burden showing that Sandra should be returned to Germany, the court will briefly address respondent's affirmative defenses to Sandra's return. The first defense relates to the provisions of Article 13(b) of the Convention which provides that return will be denied where there is a grave risk that return of the child would expose the child to physical or psychological harm. The respondent has the burden of proving this defense by clear and convincing evidence. 42 U.S.C. § 11603(e)(2)(A). For the reasons stated in the findings of fact, the court finds that the respondent has failed to meet his burden as to this issue. There is no showing that the medical facilities in Germany are not adequate to treat Sandra's condition and give to her the physical therapy she needs, nor is there any reason to believe that Ulla would not be a fit parent and able to address Sandra's medical condition.

■ The second defense is a more troubling one. That is, the defense founded upon Article 12 of the Convention which provides that when the proceedings for return of the child are commenced after the expiration of a period of one year from the date of wrongful retention, the child should not be returned if the child is now settled in its new environment. The respondent has the burden of showing this defense by a preponderance of the evidence. 42 U.S.C. § 11603(e)(2)(B). For the reasons set forth in the discussion

concerning habitual residency, this court concludes that the respondent has clearly met his burden of showing that Sandra is settled in her new environment.

The more difficult issue is whether the petition was filed more than one year after the wrongful retention as required under Article 12 of the Convention. The petition was filed on August 6, 1993, which is clearly more than one year after Sandra commenced living with Steven in Iowa. The petitioner takes the position, however, that the wrongful retention began on March 31, 1993, when Steven clearly communicated to Ulla his intention to keep Sandra on a permanent basis. If the beginning of the wrongful retention is the March 31, 1993 date, then the petition was filed within one year and the Article 12 exception does not apply.

Strong arguments can be made in support of each parties position. Since the Convention is directed principally at protection of the child, it can certainly be argued that the one year should be measured from the date the child actually starts living with the parent from whom custody is sought since it is clear that the Convention is concerned about the interest of the child who has become "settled" in his or her new environment. On the other hand, the Convention speaks about one year from the "wrongful removal or retention." As in this case, there can be no wrongful retention when the child is residing with the parent from whom custody is sought pursuant to an agreement between the parents. The wrongful retention does not begin until the noncustodial parent, in this case, Ulla, clearly communicates her desire to regain custody and asserts her parental right to have Sandra live with her.

This court has been unable to find any authority which clearly addresses this issue. It is the conclusion of this court that the correct reading of the Convention is that the one year period begins to run from the date the noncustodial parent asserts her rights of custody, which in this case would be March 31, 1993. This reading gives effect to the literal wording of the Convention and comports with what this court believes to be the spirit of the Convention. In those cases where the child has become so settled in her new environment by mutual agreement of the parties, prior to the assertion of custodial rights, then the case should be analyzed under the question of whether a new habitual residency has been established for the child. In most cases, such as this, when there is a change of custody from one parent to the other by consent, followed by a demand for return of the child, the parent demanding the return will have a difficult time showing that the voluntary change of place of residence did not also result in a change of habitual residency.

In summary, this court finds that the habitual residency of Sandra is in the state of Iowa. Consequently, the petitioner's petition for return of Sandra must be denied. Moreover, if it were determined that Sandra's habitual residency was in Germany, respondent's affirmative defenses under Articles 12 and 13 of the Convention would fail.

### ORDER

It is therefore

ORDERED.

That petitioner's petition for return of Sandra Slagenweit pursuant to the Convention on the Civil Aspects of International Child Abduction is denied.