**Gabriele CURRIER, Petitioner,**

**v.**

**Richard CURRIER, Jr., Respondent.**

**Civ. No. 94–99–M.**

United States District Court,
D. New Hampshire.

March 16, 1994.

Honey C. Hastings, Nashua, NH, for petitioner.

Ruth P. Gulick, New Hampton, NH, for respondent.

## ORDER

McAULIFFE, District Judge.

Gabriele Currier, a citizen of Germany, petitions the court pursuant to 42 U.S.C. § 11603(b), for relief under the Hague Convention on the Civil Aspects of International

Child Abduction (the "Convention")[1], Dec. 23, 1981, 51 Fed.Reg. 10493, 10498–502, implemented by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601–11610. The court exercises jurisdiction pursuant to 42 U.S.C. § 11603(a).

Petitioner seeks the immediate return of her two minor children to Germany. She alleges that the respondent, her husband Richard Currier, Jr., an American citizen and the children's father, removed them from Germany without her consent. The children, Laura, aged 2, and Collin, aged 10 months, have dual citizenship, but have lived in Germany with both parents since birth. For the reasons set forth below, the court grants petitioner the relief she requests and orders the children returned to Germany.

## BACKGROUND

This case arises from a troubled marriage. Petitioner and respondent were married on May 3, 1991, in Germany. Their first child, Laura, was born on December 27, 1991. The couple first separated in June, 1992, after which petitioner and Laura resided with her parents in Germany. The parties reconciled and their second child, Collin, was born on April 24, 1993. In August, 1993, they separated again. Petitioner again returned to her parents' German home, with the children.

After that separation, respondent retained a German attorney to assist him in securing custody of, or the right to visit, his children. On September 14, 1993, a hearing was held in Germany before the Family Court, District of Rockenhausen. On September 23, 1993, that court awarded petitioner custody of the children for the duration of the parties' separation, finding "contrary to the father's view ... [there was] no basis for doubts as regards [petitioner's] ability to care for the children. Emotional tension and reciprocal claims made by each party against the other are only based in their personal relationship with each other ... that allows no conclusion as regards the mother-child relationship." See Judgment of Sept. 23, 1993, No. 3 F 288/93, Family Court, District of Rockenhausen. The custody decree was affirmed on appeal. See Judgment of Nov. 15, 1993, No. 6 UF 165/93, High Court of Zweibruecken.

While separated, the couple agreed to seek counseling and attempt to reconcile their differences. When, in early November, 1993, petitioner's parents learned of her intention to seek another reconciliation, they told her she could not continue to live in their home if she resumed that relationship. On November 15, 1993, petitioner and the children moved back in with respondent. Their marital troubles resumed almost immediately. Both parties testified at length about behavioral lapses by the other.

By late January, 1994, tensions peaked and the marriage was, apparently, at an irreconcilable point. On January 27th the couple had an argument about the children's health, which ended with petitioner throwing something at respondent as he left to take the children to see a doctor. That evening the parties signed an agreement, drafted by respondent's German attorney, which purportedly mooted the custody decrees previously entered by the German courts. The agreement granted respondent sole custody of the children during any future marital separation or in the event of a divorce. The parties presented contradictory testimony about the circumstances surrounding the agreement's execution. Respondent claimed the agreement was a product of petitioner's demand for her freedom from the marriage and the children. Petitioner claimed she signed the document under duress and in response to threats. In any event, the agreement was signed in the presence of petitioner's friend, Roswitha Wagner, who advised petitioner against signing it and who refused to sign her own name on the witness line.

The next morning, respondent arranged to have the agreement notarized by his lawyer, believing that would render the contract legally binding under German law. Respondent testified that when he went to call his lawyer to make the appointment (the couple did not have a telephone in their apartment), he took Laura with him because he suspected petitioner might leave with the children.

**1.** Both the United States and Germany are among the signatories to the Convention.

When he returned, petitioner went to Mrs. Wagner's house to make calls of her own. She telephoned respondent's attorney to revoke her consent to the agreement. Petitioner then called the local Family Court for information related to rescinding the agreement. In an ex parte decree issued later that morning, the Family Court ordered respondent to return the children to petitioner. *See* Judgment of Jan. 28, 1994, No. 1 F 70/94, Family Court, District of Rockenhausen. Petitioner also informed a German youth services agency that she feared she was losing her children. Before obtaining a copy of the court order, petitioner returned home to get Laura, but respondent and the children were gone.

After petitioner obtained the order, she returned to Mrs. Wagner's house. There, petitioner received a call from respondent, which ended abruptly and without respondent revealing where he and the children were. Respondent learned from his German attorney that petitioner had called to revoke the agreement, but was advised that the contract was nevertheless valid under German law until petitioner proved, in court, that she had signed under psychological duress as she claimed. Respondent testified that he feared petitioner would take the children away from him, and, believing the agreement binding, he decided to leave Germany. By 6:30 that evening respondent and the children were enroute to the United States. Since then he and the children have been living with his family in Holderness and Wolfeboro, New Hampshire.

On February 10, 1994, respondent initiated legal proceedings against his wife in New Hampshire, petitioning the Grafton County Superior Court to enforce the marital agreement executed in Germany. Two weeks later he obtained a temporary restraining order against petitioner based upon her alleged prior abuse of him (petitioner was still in Germany).

Meanwhile, on the day respondent left Germany (January 28th), petitioner filed a criminal complaint with German authorities charging him with abduction of the children. Petitioner also reported the situation to the German Central Authority, designated under Article 6 of the Convention to provide assistance with international abductions of children residing in Germany. By letter dated March 10, 1994, this court was informed that the German Central Authority submitted an application for the return of the Currier children to the United States Department of State, which serves as the American Central Authority under the Convention. On March 4, 1994, petitioner brought these proceedings in this court under the Convention and ICARA seeking an order returning the children to Germany. On March 8, 1994, this court issued an ex parte order temporarily returning custody of the children to petitioner pending final disposition of the matter, and scheduled a hearing for March 14, 1994.

On March 3, 1994, the German court issued another order, affirming the custody decree of September 23, 1993, and declaring respondent's removal of the children from Germany wrongful within the meaning of the Convention. *See* Judgment of Mar. 3, 1994, No. 3 F 72/94, Family Court, District of Rockenhausen. On March 10, 1994, respondent's German attorney, Dr. jur. Hans–Otto Merkel issued an opinion letter, stating that the respondent had not violated German law by taking the children to the United States without petitioner's consent. However, a March 11, 1994, opinion letter by Dr. Donald J. Cramer, a German lawyer retained by petitioner, asserted both that Dr. Merkel's opinion was inaccurate and that respondent's actions were not consistent with German law and did constitute a "wrongful removal" within the meaning of the Convention.

On March 14, 1994, the German Central Authority issued an advisory statement, pursuant to Article 7(e) of the Convention, declaring that respondent had violated German law by removing the children without petitioner's consent and, therefore, had "wrongfully removed" the children within the meaning of the Convention.

Based on the facts adduced at the hearing and the affidavits and advisory letters submitted by the parties, as contemplated by the Convention, the court makes the following findings and rulings.

## DISCUSSION

### I. Purposes of the Convention

The preamble of the Convention explains its purpose as:

> to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence.

See 51 Fed.Reg. 10493, 10498. President Reagan, in a letter to the United States Senate, further explained that the Convention reflected "a worldwide concern about the harmful effects on children of parental kidnapping and a strong desire to fashion an effective deterrent to such conduct." See id. at 10495. To effectuate this purpose, the Convention requires signatories to act promptly to restore the factual situation that existed prior to a child's removal from the country in which he or she habitually resides. Id. The Convention does not provide a structure for resolving disputes about legal custody on the merits, but, instead, presumes that those disputes are properly resolved in the child's country of habitual residence. Id.; Art. 19, Convention; 42 U.S.C. § 11601(b)(4).

Both the Convention and ICARA insure that, absent the most extreme circumstances, a parent will not be permitted to obtain custody of a child by removing the child from his or her usual residence to a country or jurisdiction perceived by that parent to be more favorably disposed to his or her own interests. See Art. 1, Convention; see also 42 U.S.C. § 11601(a)(2). Therefore, all signatory countries have mutually committed to promptly return children who are "wrongfully removed" within the meaning of the Convention, unless one of the narrow exceptions set forth in the Convention applies. 42 U.S.C. § 11601(a)(4).

■ The Convention and ICARA have been uniformly construed as granting courts of the receiving country jurisdiction to determine the merits of the abduction claim, but not the merits of the underlying custody issue. Friedrich v. Friedrich, 983 F.2d 1396, 1399 (6th Cir.1993). Accordingly, while this court may properly determine which Con-tracting State has jurisdiction to determine the custody rights to the Currier children, it may not properly resolve the underlying custody dispute between the parents. Levesque v. Levesque, 816 F.Supp. 662, 663 (D.Kan. 1993). Courts in countries party to the Convention are duty bound to promptly return children to the country of "habitual residence" for resolution of any custody disputes. Friedrich, 983 F.2d at 1402. Parents will hardly be deterred from moving children across international boundaries in search of a more sympathetic forum, if courts in the signatory countries do not uniformly enforce the Convention in a prompt and predictable manner. See id. at 1399.

### II. Standard of Review

#### A. Wrongful Removal

■ To obtain relief, petitioner must establish by a preponderance of the evidence that the children were "wrongfully removed" within the meaning of the Convention. Art. 12, Convention; 42 U.S.C. § 11603(e)(1)(A). Removal is considered wrongful when:

> (a) it is in breach of rights of custody attributed to a person ... either jointly or alone ... under the law of the state in which the child was habitually resident immediately prior to the removal; and
>
> (b) at the time of removal ... those rights were actually exercised, either jointly or alone....

Art. 3, Convention. Petitioner must establish (1) that she was exercising lawful rights of custody at the time of the removal and (2) that the removal was from the child's "habitual residence." Meredith v. Meredith, 759 F.Supp. 1432, 1434 (D.Ariz.1991). Respondent concedes that Germany, where the children were born and have always lived, was the habitual residence of the children prior to their removal. See Respondent's Memorandum at 8 (Mar. 14, 1994). Therefore, petitioner need only establish that she was exercising valid rights of custody under German law at the time of removal.

■ The Convention requires this court to look to German law to determine whether petitioner had and was exercising valid custody rights. Friedrich, 983 F.2d at 1402.

And, in ascertaining whether there has been a wrongful removal within the meaning of Article 3, this court may take notice of the law of, and judicial or administrative decisions in, the country of the child's habitual residence. Art. 14, Convention; 42 U.S.C. § 11601(b)(2) and § 11605. To that end, the court may direct petitioner to obtain from German authorities a decision or other determination that the removal was wrongful within the meaning of Article 3. *See* Art. 15, Convention; 42 U.S.C. § 11605. Furthermore, the Central Authority of Germany may provide the court with advice and assistance regarding pertinent German law. *See* Art. 7(e) and (g), Convention; 42 U.S.C. § 11605.

Petitioner has submitted ample proof that, under German law, she had present rights to custody of the children at the time they were removed to New Hampshire. The March 3, 1994, order issued by the Family Court, District of Rockenhausen, declared that respondent's removal violated that court's earlier custody decree, thereby reaffirming petitioner's custody rights under German law. Both the opinion letter of Dr. Cramer and the advisory notice of the German Central Authority support that construction of German law (German Civil Code §§ 1671 and 1672). *See* Exhibits A and B to Petitioner's "Documents Submitted," accompanying Petitioner's Memorandum of Law Submitted 14 March 1994. This court declines to follow Dr. Merkel's contrary opinion.

Under German law, preliminary orders related to child custody pending divorce remain in effect even when circumstances change, unless and until the divorce petition is withdrawn, or the extant orders are modified. *See* Exhibit B to "Documents Submitted," Dr. Cramer's Opinion Letter at 3. Dr. Cramer's opinion referenced, and the court relies on, the following "well established decision by the Highest Appellate Court of Bavaria of 1971":

> if parents move in again (meaning resume marital cohabitation) a custody ruling does not [lose] its legal effects....

citing Civil Code, § 1671 c. 6 (53rd ed. Palandt–Diedrichsen 1994). Respondent's argument—that his reunion with petitioner effectively nullified all outstanding custody orders issued by the German courts—is incorrect.

Respondent also asserts that the German court decrees should not be recognized under the Convention, because, he claims, they were based on perjured testimony by petitioner. The German courts are fully empowered to grant appropriate relief upon a showing of fraud, and it would be inappropriate for this court to presume to second-guess the determination made by those courts on the merits, or to usurp the jurisdiction of those tribunals to address the matter of fraud in the procurement of orders from those courts. Any such review would be entirely outside the scope of inquiry permitted under the Convention.

Nevertheless, even in the absence of outstanding German custody orders, petitioner still had valid custody rights to the children when they were removed because, under German law, *both* parents retain joint rights of custody until a decree has been entered limiting one parent's rights. *See* Exhibits A and B to "Documents Submitted"; *see also Slagenweit v. Slagenweit*, 841 F.Supp. 264, 267–68 (N.D.Iowa 1993). Furthermore, the marital agreement between the parties which purportedly granted respondent sole custody of the children is, under German law, without legal effect until approved by court order. *See* Exhibit B to "Documents Submitted," Dr. Cramer's Opinion Letter at 3 (judge will scrutinize any private agreement granting custody to the non-custodial parent). Thus, on January 28, 1994, petitioner held, at the least, a joint right to custody of the children, independent of the existing custody orders.

Respondent "wrongfully removed" the children within the meaning of the Convention, because he did so in breach of petitioner's rights of custody under German law. *See* Art. 3, Convention (removal is wrongful if it breaches joint custody rights); *see also* 42 U.S.C. § 11603(f)(2) (removal is wrongful if it occurs before entry of a custody order); *accord Levesque*, 816 F.Supp. at 664 (any removal of a child by one of the joint holders without the consent of the other is wrongful) (citing 51 Fed.Reg. at 10506). Because petitioner has established by a preponderance of the evidence that the children were "wrong-

fully removed" from their habitual residence, the court is bound to order their return to Germany, "unless one of the narrow exceptions set forth in the Convention applies." 42 U.S.C. § 11601(a)(4); Art. 13, Convention.

### B. Exceptions to the Convention

Despite a showing of "wrongful removal," the court is not bound to order the children's return if (1) petitioner was not actually exercising her rights of custody at the time of removal or had consented to or acquiesced in the removal, or (2) if extenuating circumstances exist which would either present a "grave risk" of harm to the children if they were returned, or would impose upon them conditions that are antithetical to our own principles relating to human rights and "fundamental freedoms." Art. 13 and 20, Convention; 42 U.S.C. § 11603(e)(2). Respondent failed to demonstrate that any of the recognized exceptions apply.

### 1. The Marital Agreement

■ To avoid an order of return, respondent must persuade this court by a preponderance of the evidence that petitioner was either not exercising her rights of custody, or that she consented to or acquiesced in the removal of the children to the United States. 42 U.S.C. § 11603(e)(2)(B). Respondent relies heavily on the January 27 private custody agreement, as proof of petitioner's failure to "actually exercise" her rights of custody and her concomitant tacit consent to the children's removal. Article 13(a) of the Convention permits the court not to order return of the children if:

the person ... having the care of the person of the child was not actually exercising the custody rights at the time of the removal ... or had consented to or subsequently acquiesced in the removal ...

As discussed above, the agreement is without binding legal effect under German law until approved by a German court. Without conceding that point, respondent argues that the agreement at least evidenced petitioner's intent to relinquish her custody rights and obligations, which should be construed as consent to or acquiescence in the removal.

Neither contention is substantiated by the facts. Respondent was well aware of petitioner's continuing desire to retain custody; he testified, and acknowledged by affidavit, that on January 28th—the day he left Germany—he was concerned that petitioner intended to take the children from him and assert sole custody. See Respondent's Affidavit, ¶¶ 15–17 (Mar. 14, 1994). He also conceded that he brought Laura with him when he called his attorney to ensure that petitioner would not leave the apartment with the children. After speaking with his attorney, respondent immediately arranged to leave Germany with the children, and he declined to tell petitioner of his plans or whereabouts. These facts undermine his claim that petitioner abandoned her custody rights or that she consented to or acquiesced in the children's removal. See e.g. In re Ponath, 829 F.Supp. 363, 366, 368 (D.Utah 1993) (court found consent where petitioner expressly permitted respondent to return to Utah with their child and willingly remained in Germany for six more months).

To the contrary, petitioner's conduct establishes that she affirmatively did not consent to or acquiesce in respondent's control over the children. She explicitly rescinded the custody agreement before removal. She immediately invoked German legal authority (obtaining a further custody order and pressing criminal charges), and she promptly initiated action under the Convention in Germany and in this court. Petitioner not only did not consent to removal, she was undeniably attempting to exercise her custody rights, as best she could, to prevent removal. See Levesque, 816 F.Supp. at 667 (under similar facts the court concluded that whatever consent petitioner might have given had been revoked by her subsequent conduct).

### 2. The Harm to the Children

■ Finally, respondent argues that returning the children to petitioner would place them in grave risk of serious harm. Nothing presented even remotely tends to establish, by clear and convincing evidence, that the children's "social background" in Germany presents either a "grave risk ... [of] physical or psychological harm or otherwise

place[s] the child[ren] in an intolerable situation," which would undermine the fundamental freedoms our Constitution guarantees American citizens. *See* Art. 13(b) and 20; *see also* 42 U.S.C. § 11603(e)(2)(A).

The evidence presented does not establish any serious risk that either petitioner or anyone associated with her would jeopardize her children's welfare or place them in "grave risk" of physical or psychological harm. Respondent suggested that petitioner's alleged depression prevented her from coping with the responsibilities and decisions of married life, but there was no evidence she ever failed the children or placed them in actual danger. Petitioner's estranged relationship with her parents is likewise not evidence of her own parental inadequacies, and those circumstances do not preclude the children's return under Article 13(b) or 20 of the Convention. The court would note in passing that petitioner's mother accompanied her to this country to provide support and assistance in effecting the children's return.

While this court is required to "evaluate the surroundings to which the [children are] to be sent and the basic personal qualities of those located there," the court's focus is limited to the grave risk, if any, that situation seriously presents for the children. *See Tahan v. Duquette*, 259 N.J.Super. 328, 335, 613 A.2d 486 (1992) (Art. 13 requires the court "to take into account the information relating to the social background of the child"). Respondent offered no credible evidence raising any serious doubt about the safety, propriety, or nurturing character of the German environment to which the children would return. The exception is not applicable. 42 U.S.C. § 11603(e)(2)(A).

The letter and spirit of the Convention obligate this court to respect Germany's authority to resolve the underlying custody dispute to the same extent we rely upon German courts to respect like custody decisions made by courts in the United States. *See* Art. 1, 12, 16 and 19, Convention; 42 U.S.C. §§ 11601(b)(4) and 11603(d). Respondent appears to be a caring and devoted father who acted in what he believed to be his children's best interests. He is not foreclosed from pursuing those interests and his rights to custody and visitation, but he is required to do so in Germany, the country of his children's habitual residence.

### CONCLUSION

The parties' children, Laura and Collin Currier, are ordered returned to Germany, in the custody of petitioner, under the provisions of the Convention and ICARA.

On or before April 1, 1994, petitioner shall file a supported motion for costs and fees as allowed by applicable law. Respondent shall object, or otherwise respond, on or before April 15, 1994.

Both parties have informally advised the court of their desire to seek appellate review of an adverse decision. Recognizing that immediate return of the parties' children to Germany may effectively moot any appeal from this order, the court, in aid of appellate jurisdiction, hereby stays this order until 5:00 p.m. on March 23, 1994, at which time it shall be effective, unless stayed or otherwise modified by the United States Court of Appeals for the First Circuit or other court of competent jurisdiction. Petitioner's passport and the children's passports shall remain with the Clerk until this order takes effect. This court's prior order awarding temporary custody to petitioner shall remain in effect during the stay, and petitioner shall not remove the children from this jurisdiction until this order does take effect.

SO ORDERED.