**Manfred WANNINGER, Petitioner,**

v.

**Catherine Jean WANNINGER, Respondent.**

Civ. A. No. 94–30081–MAP.

United States District Court, D. Massachusetts.

April 15, 1994.

Kenneth P. Neiman, Anne V. Romano, Fierst & Neiman, Northampton, MA, for petitioner.

William E. Hart, David R. Kaplan, Brown, Hart & Kaplan, Amherst, MA, for respondent.

*MEMORANDUM REGARDING*
*PETITION FOR RETURN*
*OF CHILDREN*

(Docket No. 1)

PONSOR, District Judge.

## I. INTRODUCTION

Petitioner, Manfred Wanninger ("Manfred") alleges that his wife Catherine Wanninger ("Catherine") wrongfully retained their children in the United States without his consent. He now seeks the immediate return of his three minor children to Germany. On April 11, 1994, Manfred appeared before this court *ex parte* seeking a warrant in lieu of a writ of habeas corpus for the return of his children pending further action pursuant to the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11603(b). The court denied this request but did require that the respondent, Catherine Jean Wanninger, appear with the three children before the court later the same day. At that hearing, with both parties present, the court established a scheduling order and set the matter down for further hearing today.

In ruling on petitioner's motion, the court must decide whether Catherine's conduct—remaining in the United States with the three children and not returning to Germany—was "wrongful" as defined by the Hague Convention. As Justice Rigler noted in *Sheikh v. Cahill*, 145 Misc.2d 171, 546 N.Y.S.2d 517 (1989), modern advances in travel has produced numerous benefits to society. However, this increase in mobility has also caused major problems in the areas of matrimonial law and custody rights. "One of the hardest problems concerns the removal of a child from the jurisdiction by one parent without the consent of the other." *Id.*, 546 N.Y.S.2d at 518. This case is no exception.

## II. FACTS

The facts of this case are as follows. Manfred is a German citizen who met his wife Catherine, a U.S. citizen, while studying

at the University of Massachusetts in Amherst. They married and took up residence in Germany in November, 1987. The couple has three children: Natascha, age six; Tatjana, age four; and Sebastian, age three. All three children have lived in Germany their entire lives.

On November 25, 1993, Catherine took the children to Amherst, Massachusetts for a visit with her parents. Originally, her plan was to stay in the United States for six weeks. But after she arrived to the United States, she had second thoughts about returning to Germany with her children and, it seems, questioned her marriage to Manfred. On January 12, 1994, Catherine contacted a German neighbor and asked her to tell Manfred that she had decided to stay in the Amherst area with the children and would not return to Germany.

At first, Manfred attempted to reconcile his problems with Catherine. He came over to the United States in mid-February to convince her to return home with the children. After learning that Catherine did not intend to return to Germany with the children, Manfred sought relief in the German courts. On April 6, 1994, the German Family Court (Court of Schwetzingen) issued a ruling that Catherine had violated the Hague Convention by wrongfully retaining the children in the United States. Manfred then petitioned this court, pursuant to 42 U.S.C. § 11603(b), for relief under the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention") implemented by ICARA. Manfred seeks an order by this court to allow him to return to Germany with his children immediately.

### III. DISCUSSION

The Hague Convention is an international treaty designed "to protect custody rights on a global scale" and was adopted

> to protect children from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access.

51 Fed.Reg. 10,498 (1986); *Meredith v. Meredith,* 759 F.Supp. 1432, 1433 (D.Ariz.1991).

In order to establish this goal, the Convention requires signatories to act promptly to restore the situation that existed prior to a child's removal from his or her habitual residence. *Currier v. Currier,* 845 F.Supp. 916, 1994 WL 86375 (D.N.H.1994), 1994 U.S.Dist. LEXIS 3208. Both the United States and Germany are signatories to the Hague Convention.

■ In 1988 Congress passed the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. 11601 et seq. (1988), in order to establish procedures to implement this aspect of the Hague Convention in the United States. *David S. v. Zamira S.,* 151 Misc.2d 630, 574 N.Y.S.2d 429 (1991). Taken as a whole, these procedures are aimed at maintaining the status quo and deterring parents from crossing international boundaries in search of a more sympathetic court. *Friedrich v. Friedrich,* 983 F.2d 1396, 1400 (6th Cir.1993).

■ The Convention authorizes a federal district court to determine the merits of the *abduction* claim but does not allow it to consider the merits of the underlying custody dispute. *Currier v. Currier,* 845 F.Supp. 916, 1994 WL 86375, 1994 U.S.Dist. LEXIS 3208, citing *Friedrich v. Friedrich,* 983 F.2d 1396, 1399 (6th Cir.1993); *Meredith v. Meredith,* 759 F.Supp. at 1434. Therefore, the court's inquiry is limited to whether Catherine's retention of the children was "wrongful" under the Convention.

In order to prevail, the petitioner has the burden of proving by a preponderance of the evidence that the three children were "wrongfully retained" within the meaning of the Convention. *Currier v. Currier,* 845 F.Supp. 916, 1994 WL 86375, 1994 U.S.Dist. LEXIS 3208 (1994); 42 U.S.C. § 11603(e)(1)(A). "Wrongful retention" occurs when:

> a. it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> b. at the time of removal or retention those rights were actually exercised, either

jointly or alone, or would have been so exercised but for the removal or retention. Convention, Art. 3.

If the petitioner carries his burden of proving that the retention was "wrongful," the court is required to order immediate return of the children unless the respondent meets one of four limited exceptions. These exceptions are: (1) grave risk that return of the children would expose them to physical or psychological harm; (2) violation of fundamental principles of the requesting State relating to the protection of human rights and fundamental freedoms; (3) delay more than one year after the children have become settled in a new environment; or (4) consent by the petitioner to the removal or retention. The first two exceptions must be proved by clear and convincing evidence, while the latter two need only be proved by a preponderance of the evidence. 42 U.S.C. § 11603(e)(2)(A) and (B).

■ Based on the facts before it today, the court is compelled to grant petitioner's request to return to Germany with the three children. There is no dispute that, except for a few visits to Catherine's parents in the United States, the three children have lived in Germany. All three children were born in Germany and attend school there. This being the case, the court finds that the children were "habitually resident" in Germany immediately prior to their removal by Catherine. Moreover, prior to their removal, petitioner was exercising his lawful rights of custody over the children. The issue of custody must be addressed under German law. *Friedrich v. Friedrich*, 983 F.2d at 1402. Petitioner has attached a copy of the relevant provision of the German Civil Code which gives both parents joint custody of the children. *See* Petitioner's Exhibit D, German Civil Code § 1626. Because the children were habitually resident in Germany and because Manfred is entitled to joint custody, they must return to Germany absent some exception.

None of the statutory exceptions applies to this case. It is undisputed that the children arrived in the United States some time in November of 1993, less than one year from the time Manfred instituted this proceeding to return the children to Germany. There-

fore, the exception relating to the children being settled in a new environment for more than one year is inapplicable. Respondent is left with only three exceptions, all of which are construed very narrowly, and are not warranted by the facts in this case.

■ Respondent's central argument is that, even if petitioner has met his initial burden of proof, the children should not be returned to Germany because petitioner acquiesced to the retention of the children in the United States. To invoke this exception, respondent must prove by a preponderance of the evidence that petitioner consented to or subsequently acquiesced to their retention. Even if one of the exceptions is found applicable, the court is not required to refuse a return order. *Levesque v. Levesque*, 816 F.Supp. 662, 667 (D.Kan.1993).

■ In support of her position, Catherine offers the following evidence. First, during an argument sometime in August or September of 1993, Manfred told her to "pack up and go with the children back to the United States." Second, Catherine claims that when she had resided in Amherst for about one month, Manfred wrote to her and informed her that he would travel to the United States to talk about reconciliation. During this period, Manfred wrote to Catherine and expressed an interest in solving their marital problems. Catherine claims that in these letters Manfred acquiesced to the children's retention in the United States and that he reaffirmed this position when he visited in February of 1994. According to Catherine, Manfred wanted to reunite the family and agreed that she and the children could stay in Amherst during the period of attempted reconciliation. *Id.* at ¶ 13. Catherine maintains that this evidence is sufficient to support a finding that Manfred acquiesced to the children staying in Amherst.

In making its determination, it has not been necessary for the court to take evidence. The facts are largely uncontested. The sole area of confusion revolves around whether Manfred had knowledge of and consented to Catherine's *initial* decision in November 25, 1993, to travel to the United States with the children. The personal let-

ters written by Manfred to Catherine after she left Germany seem to contradict his position that he did not know that Catherine and the children were leaving for the United States. However, even accepting Catherine's position that Manfred consented to her taking the children to the United States for a limited period, it does not follow that Manfred acquiesced to the children's permanent retention in the United States once he realized that his marriage was irreconcilable. The Hague Convention covers both wrongful removal and wrongful *retention.*

The sequence of events and actions taken by Manfred strongly supports the conclusion that Manfred did not agree that the children remain in the United States for an indefinite period of time. Catherine and the children left Germany on November 25, 1993. By January of 1994 Manfred had communicated to Catherine his intention to visit her and the children to work out their marital difficulties. This visit was postponed at the request of Catherine, who asked Manfred to delay his trip. Nevertheless, in mid-February Manfred arrived in Amherst unannounced and stayed for approximately two weeks. During this time, he visited the children and participated with Catherine in counseling sessions with a priest of the Episcopal Church in Amherst.

After realizing that his attempt to reunite his family was fruitless, Manfred returned to Germany. Within a few days of arriving home, he filed a petition with the German courts for the return of his children. Moreover, throughout the entire period when the children and Catherine resided in Amherst, Manfred attempted to keep in continual contact with them by writing letters and calling on the telephone. Based on these facts, Catherine cannot prove by a preponderance of that Manfred acquiesced to the children's retention in the United States.

In further support of her position that Manfred acquiesced that the children should remain in the United States, Catherine points to statements made by Manfred in personal letters to written to her and to conversations with Reverend Clark. This evidence, Catherine claims, shows that Manfred agreed that the children should remain in the United States while they continued to work on their marriage. As a preliminary matter, the court is doubtful as to the admissibility of Reverend Clark's statements regarding conversations he had with the Wanningers in his role as a pastoral counsellor. However, even if respondent were able to get over this hurdle and show this is not privileged information or that Manfred waived his privilege, the court's decision is not altered by Reverend Clark's submission.

The letters and conversations between Catherine and Manfred relate to Manfred's attempt to reconcile his marriage and return home to Germany with his wife and their three children. These conversations do not support a finding that he acquiesced to the retention of the children in the United States. The facts of the English cases offered by respondent are inapposite. To conclude, if a custody dispute is to occur, it will be in Germany and not the United States.

Instructive in the court's ruling is *Currier v. Currier,* 845 F.Supp. 916, 1994 WL 86375, (D.N.H.1994), 1994 U.S.Dist. LEXIS 3208, whose facts are remarkably similar to those before the court. *Currier* involved a custody dispute between petitioner Gabriel Currier, the children's mother, a German citizen, and Richard Currier, the children's father, an American citizen. A German court gave temporary custody of the two children to Gabriel during separation proceedings. After counseling proved fruitless, the Curriers decided to divorce.

On January 27, 1994, Gabriel signed an agreement drafted by Richard's attorney granting Richard sole custody of the children. The next day, realizing the full effect of her decision, Gabriel attempted to revoke the agreement, claiming that she signed it under duress and in response to threats by Richard. In an *ex parte* decree, a German Family Court ordered Richard to return the children to Gabriel.

After she obtained the order, Gabriel attempted to contact Richard and demand return of the children. However, Gabriel was too late. While she was attempting to obtain a court order, Richard and the children boarded a plane to the United States and settled in New Hampshire.

Gabriel petitioned the United States District Court of New Hampshire for relief under the terms of the Convention, requesting the return of the two children to Germany. After a thorough analysis of this situation, the district court granted Gabriel's petition and ordered that the children be sent back to Germany. The court reasoned that Richard's removal of the children was "wrongful" within the meaning of the Convention because, under German law, Gabriel had the right to custody of the children at the time they were removed. Finding that Richard failed to meet any of the exceptions under the Convention, the court ordered that the children return to Germany with their mother.

Similarly, in this case, the court is left with only one conclusion. The court must grant the petitioner's motion and will allow him to take the children back to Germany.

## IV. CONCLUSION

For all of the reasons stated above, the court hereby ALLOWS the Petition for Return of Children to the Petitioner. The parties' three children, Natascha, Tatjana and Sebastian, are ordered to return to Germany in the custody of the petitioner. In addition, counsel for petitioner will be given until April 23, 1994, to file a request for attorney's fees and costs. Counsel for respondent will file his opposition by May 1, 1994.