**Barbara MEZO, individually and on behalf of her minor children, Mohammed Mezo–Elmergawi and Leila Mezo–Elmergawi, Plaintiff,**

v.

**Abdelaziz Mohammed ELMERGAWI, and Warren Christopher, Secretary of State, Defendants.**

No. CV 93–3421 (ADS).

United States District Court, E.D. New York.

June 13, 1994.

**60**

Barbara Mezo, pro se.

Zachary W. Carter, U.S. Atty., E.D.N.Y., by Asst. U.S. Atty., Millicent Y. Clarke, for defendant Warren Christopher.

### MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

In one of the few cases to address the International Child Abduction Act (the "Child Abduction Act"), 42 U.S.C. §§ 11601–11610, this Court is called upon to determine whether the Child Abduction Act applies to a situation in which two children are taken from the United States and brought to Egypt and then to Libya.

The plaintiff Barbara Mezo ("Mezo") commenced this action pursuant to the Child Abduction Act to obtain an injunction ordering the Secretary of State, Warren Christopher, to perform his duties under the Hague Convention on the Civil Aspects of International Child Abduction, an international treaty (the "Hague Convention"). The plaintiff Mezo had previously moved for a preliminary injunction in this action, which motion was denied by the Honorable Denis R. Hurley on August 10, 1993 and affirmed by the Second Circuit on March 15, 1994 (*See Mezo v. Elmergawi*, 22 F.3d 1091 [2d Cir.1994] [unpublished opinion] [finding no likelihood of success on the merits since the children were taken to either Libya or Egypt; countries that did not sign the Hague Convention]).

The defendant Warren Christopher, as the Secretary of State, now moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on the grounds that the plaintiff failed to state a claim, as a matter of law.

At oral argument on February 4, 1994, the Court indicated to the plaintiff Mezo that it was considering the dismissal of this action with respect to both defendants, not just the movant defendant Warren Christopher. The Court further issued an Order, dated February 4, 1994, instructing the plaintiff that "should the plaintiff Barbara Mezo wish to file papers in opposition to the possible dismissal of the above entitled action as to both defendants, the papers must be served and filed on or before Friday, February 18, 1994" (Order, dated Feb. 4, 1994, at p. 2).

### BACKGROUND

The plaintiff Mezo seeks the return of her two children, who are allegedly living in Lib-

ya with the plaintiff's husband, Abdelaziz Mohammed Elmergawi, a defendant in this action (*See* Complaint, at ¶ 6). The complaint alleges that the plaintiff and her husband separated on June 13, 1986, after which time, both children lived with the plaintiff (*See* Complaint, at ¶ 7). After the divorce proceedings were commenced, but prior to determinations relating to the issues of custody, alimony, and/or child support, the complaint alleges that the plaintiff's husband abducted both children on May 20, 1988 and went to Egypt (*See* Complaint, at ¶ 11). On August 17, 1988, the plaintiff was granted legal custody of both children by order of a Justice of the Supreme Court, Kings County (*See* Complaint, at ¶ 12).

Thereafter, the plaintiff alleges that she traveled to Egypt and was eventually awarded custody of both children under Egyptian law in an Egyptian Court (*See* Complaint, at ¶ 14). However, after this award of custody the plaintiff's husband allegedly fled with both children to Libya, where the three presently reside (*See* Complaint, at ¶ 14).

The plaintiff instituted this action in an attempt to utilize the provisions of the Child Abduction Act and have this Court order the defendant Secretary of State to implement the provisions of the Child Abduction Act and obtain the return of the plaintiff's two children. According to an Executive Order signed by former President Ronald Reagan (Executive Order No. 12648, 53 F.R. 30637 [1988]), the Department of State is designated as the "Central Authority" of the United States for the purposes of the Hague Convention and the Child Abduction Act.

It is the position of the defendant Secretary of State that neither the Child Abduction Act, nor the Hague Convention, apply to this case because neither Egypt nor Libya are signatories to the Hague Convention and are therefore not bound by its requirements. The defendant Christopher moves to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6).

### *DISCUSSION*

#### *Motion to Dismiss:*

On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' " (*Goldman v. Belden*, 754 F.2d 1059, 1065 [2d Cir.1985] [quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)]; *see also IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052–53 [2d Cir. 1993]). The Second Circuit stated that in deciding a Rule 12(b)(6) motion a Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken" (*Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 [2d Cir.1993]; *see also Rent Stabilization Ass'n of the City of New York v. Dinkins*, 5 F.3d 591, 593–94 [2d Cir.1993] [citing *Samuels, supra*, 992 F.2d at p. 15]).

It is not the Court's function to weigh the evidence that might be presented at a trial, the Court must merely determine whether the complaint itself is legally sufficient (*See Goldman, supra*, 754 F.2d at p. 1067) and in doing so, it is well settled that the court must accept the allegations of the complaint as true (*see LaBounty v. Adler*, 933 F.2d 121, 123 [2d Cir.1991]; *Procter & Gamble Co. v. Big Apple Indus. Bldgs, Inc.*, 879 F.2d 10, 14 [2d Cir.1989], *cert. denied*, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 [1990]), and construe all reasonable inferences in favor of the plaintiff (*See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 [1974]; *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1099 [2d Cir.1988], *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 [1989]).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed.R.Civ.P. 8[a][2]), and that "[a]ll pleadings shall be so construed as to do substantial justice" (Fed.R.Civ.P. 8[f]). It is within this framework that the Court addresses the present motion to dismiss.

#### *Hague Convention/International Child Abduction Act:*

Congress promulgated the International Child Abduction Remedies Act in 1988

in order to implement the provisions of the Hague Convention in the United States (*See* 42 U.S.C. § 11601[b][1] ["It is the purpose of this chapter to establish procedures for the implementation of the [Hague] Convention in the United States" ]; *see also Wanninger v. Wanninger,* 850 F.Supp. 78, 80 [D.Mass. 1994] ). Therefore, to determine the scope of the Child Abduction Act, the Court must examine the relevant provisions of the Hague Convention.

The preamble to the Hague Convention states that it was adopted in order "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure prompt return to the State of their habitual residence, as well as to secure protection for rights of access" (Hague Convention, 51 F.R. 10494, 10498 [1980]; *see also Friedrich v. Friedrich,* 983 F.2d 1396, 1400 [6th Cir.1993] [addressing purpose of convention]; *Currier v. Currier,* 845 F.Supp. 916, 920 [D.N.H. 1994] [same]; *Klam v. Klam,* 797 F.Supp. 202, 205 [E.D.N.Y.1992] [same] ).

Within the meaning of the Hague Convention, the removal of a child from a country is considered wrongful when:

> "a   it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention;  and
>
> b   at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention" (Hague Convention, Article 3;  *see also Meredith v. Meredith,* 759 F.Supp. 1432, 1434 [D.Ariz.1991] ).

This initial burden of proof rests with the plaintiff (*See Friedrich, supra,* 983 F.2d at p. 1400; *Currier, supra,* 845 F.Supp. at p. 920).

Unfortunately, the provisions of the Hague Convention, which in this Court's view is an admirable demonstration of constructive international policy legislation, are only applicable to those countries who signed the Convention and thereby agreed to abide by its terms. The limited applicability of this Convention is noted in several places.

First, the stated objective of the Convention is to "secure the prompt return of children wrongfully removed to or retained in any *Contracting* State" (Hague Convention, Article 1 [emphasis added]; *see also; Wanninger, supra,* 850 F.Supp. at 80 [United States and Germany are both signed Hague Convention]; *Slagenweit v. Slagenweit,* 841 F.Supp. 264, 268 [N.D.Iowa 1993] [same] ). As a result, the Convention does not apply to a child "removed to" or "retained in" a country which is *not* a "Contracting State". Further, the provisions of the Convention only apply to a "child who was habitually resident in a Contracting State immediately before any breach of custody or access rights" (Hague Convention, Article 4; *see also Mohsen v. Mohsen,* 715 F.Supp. 1063, 1065 [D.Wyo.1989] ).

When the above two limitations are examined together, both appear to illustrate that the Hague Convention only applies in a situation in which a child: (1) is "habitually resident" in a Contracting State prior to removal; and (2) is removed to another Contracting State (*See* Hague Convention, Articles 1 & 3; *see also Application of Ponath,* 829 F.Supp. 363, 364 [D.Utah 1993] ).

Second, the Child Abduction Act requires the President to designate a Federal Agency to serve as the "Central Authority for the United States under the Convention" (42 U.S.C. § 11606[a] ). This "Central Authority" appears to act as a mediator between countries in an attempt to obtain the safe return of an abducted child. (Hague convention, Article 7). As mentioned above, former President Ronald Reagan designated the Department of State as the Central Authority of the United States (*See* 53 F.R. 30637 [1988]; *see also* Bureau of Consular Affairs, U.S. Department of State, *International Parental Child Abduction,* pp. 9–10 [August 1993] [discussing procedure under Hague Convention] ).

One of the regulations promulgated by the Department of State sets forth the procedures to be followed in situations involving a child abducted from the United States (*See* 22 C.F.R. § 94.7). This regulation specifically states that it applies only when the De-

partment of State receives "an application requesting access to a child or return of a child abducted from the United States *and taken to another country party to the Convention ...*" (22 C.F.R. § 94.7 [emphasis added]). This regulation clearly sets forth procedures that are applicable if a child is taken from the United States and is taken to another signatory country. Alternatively, in situations where a child is retained in the United States, the only procedures that are set forth in the regulations promulgated by the Department of State are those which apply when a request for the child's return is made from another signatory country (*See* 22 C.F.R. § 94.6).

▮ Therefore, the regulations set forth by the Department of State, which interpret and implement the Child Abduction Act, only apply in situations involving two countries that signed the Hague Convention. If a child is taken from a signatory country and is retained in a non-signatory country, it appears that there is no remedy under either the Child Abduction Act or the Hague Convention. Similarly, if a child is taken from a non-signatory country and is retained in a signatory country, there is no remedy under either enactment (*See Mohsen, supra,* 715 F.Supp. at p. 1065).

Therefore, the Court concludes that the regulations promulgated by the Department of State support the proposition that a remedy is only available under the Child Abduction Act and the Hague Convention when the child is wrongfully removed from a signatory country and retained in another signatory country (*See, e.g., Grimer v. Grimer,* 1993 WL 142695 [D.Kan.1993]; *Levesque v. Levesque,* 816 F.Supp. 662 [D.Kan.1993]).

It is within this legal framework, that the Court examines the plaintiff's complaint to determine whether it alleges the removal of the children from a signatory country and their retention in another signatory country. In this regard, the Court is mindful that the plaintiff is proceeding *pro se* and that "the complaint must be 'liberally construed' in favor of the plaintiff[ ] and held to 'less stringent standards than formal pleadings drafted by lawyers'. *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per

curiam) (citing *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)) " (*Ferran v. Town of Nassau,* 11 F.3d 21, 22 [2d Cir.1993]).

### Plaintiff's Complaint:

The factual description contained in the complaint states that the plaintiff's children were taken from the United States to Egypt, and thereafter from Egypt to Libya (Complaint, at ¶¶ 11 and 14). Thus, the complaint clearly alleges the removal of her children from the United States, a signatory state. However, although the United States is a signatory country to the Hague Convention, Egypt and Libya are not. As a result, based on the reasons set forth above, the Convention and the Act are not applicable in this situation. Accordingly, the Secretary of State cannot be compelled to act pursuant to the powers granted to his office by the Act and the plaintiff's cause of action fails to state a claim, as a matter of law.

As to the defendant Abdelaziz Mohammed Elmergawi, the husband of the plaintiff Mezo, the Court finds that for the reasons stated above, since the Child Abduction Act does not apply to a situation in which children are taken to either Libya or Egypt, non-signatory countries, there is no basis for this Court to assert jurisdiction over the defendant Elmergawi. Accordingly, after providing oral and written notice to the plaintiff of the Court's contemplated dismissal of this action as to both defendants, and having received no opposition papers, this action is dismissed against the defendant Elmergawi pursuant to Fed.R.Civ.P. 12(b)(6), based on the failure to state a claim.

It is a tragic circumstance when, despite two valid court orders, a mother is unable to regain the lawful custody of her two minor children, or to even see her children, by reason of the unlawful conduct of their father. However, since the Federal Court is a court of limited jurisdiction and the Child Abduction Act is only applicable between countries that signed the Hague Convention, this Court does not have jurisdiction under the statute and must therefore dismiss the complaint.

**64**

## CONCLUSION

Based on the foregoing:

1) The defendant's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) against the defendant Warren Christopher, as Secretary of State, is granted on the ground that the plaintiff failed to state a claim under the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601–11610;

2) The Court's *sua sponte* motion to dismiss the complaint against the defendant Abdelaziz Mohammed Elmergawi pursuant to Fed.R.Civ.P. 12(b)(6) is granted on the ground that the plaintiff failed to state a claim under the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601–11610; and

3) Having dismissed the complaint, the Court need not address the motion by the plaintiff Mezo to transfer the venue of this action to the Brooklyn courthouse of the United States District Court for the Eastern District of New York.

The Clerk of the Court is advised that this Order closes the case.

**SO ORDERED.**