OPINION OF THE COURT
William Rigler, J.
In this modern society, the advances in travel have increased the mobility of individuals and families throughout *172 the world. While in many situations the increase in mobility leads to a vitality in society, in the arena of matrimonial law and more particularly custody or visitation, the increase in mobility has created major problems. One of the hardest problems concerns the removal of a child from the jurisdiction by one parent without the consent of the other parent. It is just this issue which the court must now confront in the case at bar. In fact in this case the child, though only nine years old, has lived with one or both of his parents in Pakistan, the United States, Ireland and the United Kingdom.
This present application will give the court, in what it believes is a case of first impression, a chance to address the 1980 Hague Convention on the Civil Aspects of International Child Abduction (hereinafter the Hague Convention; reprinted at 51 Fed Reg 10498, Appendix B). The Hague Convention became effective in the United States on July 1, 1988. From that date on the Hague Convention has been in force between the United States and the other signatories.
The Hague Convention provides for the prompt return of children abducted to or wrongfully retained in a country when both that country (in this case the United States) and the country of the child’s habitual residence (in this case the United Kingdom) are parties to the Hague Convention and for so long as the child is under age 16 (true in this application). The obligation to return a child which is subject to certain limited exceptions applies whether or not there is an outstanding custody decree for the child and regardless of the child’s nationality. The beauty of the Hague Convention is that if the requirements are met the return of the child is mandatory so long as the petition is made within one year of the wrongful retention.
In order to provide for the uniform and effective implementation of the Hague Convention in the United States, Congress enacted the "International Child Abduction Remedies Act” (Pub L 100-300, 42 USC § 11601 et seq.) which deals primarily with requests for the return of children from the United States and which addresses such matters as which courts have jurisdiction to hear return requests in the United States, venue, the burden of proof to be met by the petitioning parent and the respondent, and certain functions of the United States Central Authority (the Office of Citizens Consular Services). The regulations setting out the procedures to be followed in using the Hague Convention are contained in 22 CFR part 94 or the June 23, 1988 Federal Register (53 Fed Reg 23608).
*173 The United States Central Authority under the Convention, which provides assistance to those seeking to avail themselves of the Convention benefits and screens incoming requests from other countries, is located in the State Department’s Bureau of Consular Affairs. It was through a communication from this office as well as an order to show cause that the present case came to the attention of the court.
FACTS
The parties were married in 1978 in Karachi, Pakistan. Later that year they moved to New York City. In April 1980 the child Nadeem Khalid Sheikh was born in the United States. In March 1981 the child was taken to Pakistan. Defendant claims and a later decision of a court found, that this was done without her knowledge or consent. Defendant in turn took the child from Pakistan, without plaintiff’s knowledge or consent. She brought him to her relatives in Ireland. Thereafter, defendant returned to New York for at most a few weeks. Nadeem remained in Ireland. Both parties started various New York City Family Court proceedings which were eventually abandoned, denied or marked off the calendars. Defendant returned to Ireland.
Three years later in 1984 plaintiff served defendant with papers for a divorce. Service was made in Dublin, Ireland. In May 1984 defendant returned to the United States with Nadeem. Defendant did not answer the divorce papers. She claims she thought a reconciliation was in the works. The divorce was processed as an uncontested on July 23, 1984 with custody of Nadeem remaining with both parties.
In the fall of 1984 defendant started proceedings to reopen the divorce based upon lack of jurisdiction and lack of proper service. The parties were in litigation for approximately IVz years concerning the jurisdiction, economic issues, and visitation. Plaintiff did not see Nadeem during this time. In June 1986, the matters were finally resolved in an order by Judicial Hearing Officer Joseph Imperato. Custody was not disturbed. However, the child was to reside with defendant. Plaintiff was given only limited supervised visitation which was to slowly increase. This visitation was in part based upon plaintiff’s previous removal of the child to Pakistan.
In July 1986, without the consent or knowledge of plaintiff defendant left New York with Nadeem to settle in London, England. She had family there. A warrant was issued from *174 Kings County Family Court for defendant’s arrest due to the violation of the visitation order.
In November 1988, after tracking defendant and Nadeem to London, plaintiff commenced a wardship proceeding in the High Court of Justice Family Division, Principal Registry, London. He thus submitted himself to the jurisdiction of that court thereby agreeing to abide by its decision. He did not commence a proceeding pursuant to the Hague Convention even though both the United States and the United Kingdom were signatories as of July 1, 1988.
Initially, the court committed Nadeem to the interim care and control of plaintiff pending a hearing. One week later on November 10, 1988, the child was returned to the care and control of defendant and the matter was adjourned. Plaintiff then returned to the United States. While plaintiff was in New York the warrant of arrest for defendant under Kings County Family Court docket No. V766/86 was vacated. Plaintiff’s application in that court for custody was also denied due to the fact that the courts in London were exerting jurisdiction over the matter.
The litigation resumed in London where the matter returned to the High Court of Justice’s calendar in the middle of December 1988. That court permitted extended visitation with Nadeem by plaintiff over the holiday season but continued the previous interim award of care and control being with defendant. This visitation appears to have proceeded without problems.
A final order was rendered by the High Court of Justice on April 26, 1989. The court ordered that Nadeem was to remain a ward of the court in London with care and control to remain with defendant. Plaintiff, however, would have long periods of visitation with the child in the United States, including not less than one month in the summer. It was at the end of this first summer visitation that plaintiff refused to return Na-deem to the United Kingdom and applied to this court to award him custody of Nadeem.
As a result of plaintiff’s failure to return Nadeem, an order has been issued from the High Court of Justice finding that plaintiff has wrongfully retained Nadeem within the meaning of article 3 of the 1980 Hague Convention on the Civil Aspects of International Child Abduction.
ANALYSIS
The court is now faced with an application by plaintiff to *175 enforce a 1986 custody decree of this court and thereby award him custody due to defendant’s violation of the award of joint custody. In response, defendant has brought on an application pursuant to the Hague Convention, for the return of Nadeem based upon the April 1989 order of the High Court of Justice of London. Her contention is that Nadeem is being improperly retained in the United States.
The first question is whether the Hague Convention applies. The court is faced with a facially valid order of a court from a country which is a cosignatory of the Convention. Plaintiff raises the issue, however, that since the initial custody decree was made in New York and defendant violated it, the High Court of Justice’s decree is a nullity. He argues that this court’s orders should control.
The problem with this analysis is that plaintiff did not take this court’s order to the High Court of Justice to petition for enforcement under the Hague Convention. Rather he commenced a wardship proceeding in the High Court of Justice. He thereby submitted himself to the jurisdiction of the foreign court so that it could make a de nova custody award in part based upon defendant’s actions in New York. Not being satisfied with the results of that strategy, plaintiff cannot now come back to this court to ask it to ignore the custody/ visitation decision and order of a court of a Hague Convention cosignatory nation which was subsequent to the decision and order of this court. Plaintiff’s remedies lie in the appellate procedures of the courts of the United Kingdom not a collateral attack in the New York State courts.
Having determined that the High Court of Justice decree is viable this court must now apply the dictates of the Hague Convention to determine how the foreign decree is to be enforced. The child Nadeem is under 16 years of age thus meeting the under-16-years-of-age requirements of the Hague Convention (art 4). Since he has lived in London for over 2 Vi years, the United Kingdom, a signatory nation, would be the country in which he habitually resides. Thus, the Hague Convention is applicable to Nadeem’s situation (art 4).
Defendant has now come before this court to seek the return of Nadeem contending that he has been wrongfully retained in the United States. Article 3 of the Hague Convention sets forth the guidelines in this area. It reads in full:
"Article 3
"The removal or the retention of a child is to be considered wrongful where—
*176 "a it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
"b at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.
"The rights of custody mentioned in sub-paragraph a above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.”
Clearly pursuant to the April 1989 order of the High Court of Justice Nadeem was to be returned to defendant’s care but without the permission of defendant, plaintiff has failed to do so. In fact, the High Court of Justice has already made a determination that Nadeem is being wrongfully retained. This court concurs that within the meaning of article 3 of the Hague Convention, Nadeem is being wrongfully detained in this country.
Once the child is declared to be wrongfully retained articles 12 and 13 of the Hague Convention dictate what procedures are to be followed. They read in pertinent part:
"Article 12
"Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith. * * *
"Article 13
"Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that— * * *
"b there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.
"The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.
*177 "In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child’s habitual residence.”
Since Nadeem has been retained in the United States for less than one year unless an exception under article 13 applies, this court must order the return of Nadeem forthwith (art 12).
Plaintiff seeks to avoid Nadeem’s return to the United Kingdom by claiming that the exceptions contained in subdivision (b) and the next unlettered paragraph of article 13 apply. Specifically, he argues that there is a grave risk that Na-deem’s return would expose him to physical or psychological harm or otherwise place him in an intolerable situation and that Nadeem, who is of suitable age, objects to the return.
The court notes that a finding that an exception under article 13 (b) exists must be based upon clear and convincing evidence (42 USC § 11603 [e] [2]). The court interviewed Na-deem in camera. Nothing in that interview or in the papers presented to the court on plaintiff’s motion or in plaintiff’s offer of proof indicated that Nadeem’s return to the United Kingdom would pose a grave risk of exposure to physical or psychological harm or that he would be placed in an intolerable situation.
In addition, this court finds that Nadeem has not attained an age and degree of maturity to warrant this court to take account of his views so as to avoid his return to London. He is only nine years old. The in camera interview revealed that Nadeem did prefer to stay in the United States. However, this appeared to be very much the result of his being wooed by his father during the visitation. Given Nadeem’s age and maturity, this reaction to the summer vacation is to be expected.
Therefore, the exceptions to mandatory return contained in article 13 do not apply to this case. Pursuant to article 13 since Nadeem has been wrongfully retained for less than one year he must be returned to the United Kingdom. The court notes, however, that it is not making a determination on custody. The Hague Convention does not permit such a determination at this stage (see, art 16). In fact article 19 specifically states:
"Article 19
"A decision under this Convention concerning the return of *178 the child shall not be taken to be a determination on the merits of any custody issue.”
The custody issue is now for the courts of the United Kingdom to address. Therefore, it is ordered that plaintiffs application is denied in its entirety and the child is to be returned to the United Kingdom under defendant’s care. The issues of costs and counsel fees are reserved for future determination by the court upon the submission of papers.