In re Brenda Lee LEWIN.

No. 03–04–00229–CV.

Court of Appeals of Texas, Austin.

May 27, 2004.

John F. Campbell, Law Office of John F. Campbell, P.C., Austin, for relator.

Charles E. Lance, Cameron, for Real Party In Interest.

Before Justices KIDD, B.A. SMITH and PEMBERTON.

## *OPINION*

SMITH, Justice.

Relator Brenda Lee Lewin, a resident of New Jersey, requests that this Court vacate a temporary order awarding the right to determine primary residence of her daughter to the child's father, Robert George Farnsworth. This proceeding presents complex jurisdictional issues created by the interplay between the Hague Convention on the Civil Aspects of International Child Abduction[1] and the Uniform Child Custody Jurisdiction and Enforcement Act,[2] as codified in family code section 152.202.[3] Because the trial court did not first enforce an order from a Canadian court pursuant to the Hague Convention ordering Farnsworth to return the child to Lewin, and because the trial court was otherwise without subject-matter jurisdiction to enter the temporary order modifying custody, we will conditionally grant the writ.

### FACTUAL AND PROCEDURAL BACKGROUND

Lewin and Farnsworth, who never married, are the parents of a daughter, T.M.F., born in 1998 while the parents lived in New Jersey. The three moved from New Jersey to Florida, but eventually settled in Milam County, Texas, in 2000. Lewin and Farnsworth's relationship soured and, in October 2002, Lewin left Texas with the child and moved in with her parents in Wayne, New Jersey. Lewin obtained a temporary restraining order against Farnsworth in New Jersey, alleging domestic violence. Farnsworth went to New Jersey and appeared at a hearing in which the restraining order was dissolved. After the court appearance, Farnsworth visited with the child. He returned to Lewin's parents' home the next day and asked to take the child out for breakfast. Instead of taking the child to breakfast, however, Farnsworth drove

1. *See* Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, 19 I.L.M. 1501 [hereinafter Hague Convention].

2. *See* UCCJEA § 202, 9 U.L.A. 81 (Supp. 2004).

3. *See* Tex. Fam.Code Ann. § 152.202 (West 2002).

off with her and returned to Texas. Once in Texas, he filed a suit affecting the parent-child relationship (SAPCR) seeking joint managing conservatorship of the child and asking that he be designated the conservator with the exclusive right to decide the child's primary residence. On October 22, 2002, Lewin filed an answer and counter-petition seeking appointment as sole managing conservator. On November 5, 2002, the district court entered an order (the original SAPCR order) granting joint managing conservatorship and designating:

> Brenda Lee Lewin, as the joint managing conservator of the child, shall have exclusive right to determine the primary residence of the child so long as Brenda Lee Lewin ceases to reside with her parents at 12 Brookside Road, Wayne New Jersey, and obtains a residence of her own by September 1, 2003 and so long as the primary residence of Brenda Lee Lewin and the child is located within 40 miles of the city limits of Wayne, New Jersey. IT IS FURTHER ORDERED AND DECREED that, if Brenda Lee Lewin fails to obtain a place of residence for herself and the child by September 1, 2003, or fails to reside within 40 miles of the city limits of Wayne, New Jersey, or resumes living with her parents after September 1, 2003, Robert George Farnsworth shall have the right to determine the primary

residence of the child subsequent to September 1, 2003 . . . .

The original SAPCR order set out a visitation schedule for the period between November 5, 2002 and August 31, 2003 in which the child would stay with each parent for periods of time ranging from a few weeks to three months.[4] The order then set out alternative visitation schedules depending on whether the parent without the right to designate primary residence does or does not live within 100 miles of the residence of the child.

Lewin and Farnsworth followed the schedule set forth in the original SAPCR order through the summer of 2003; the child lived in New Jersey when she was with Lewin and in Texas when she was with Farnsworth. When Farnsworth picked up the child on July 5, 2003, however, he took the child to Montreal, Quebec, and the two lived in an apartment with Farnsworth's mother. Farnsworth sent a handwritten letter to the Milam County District Clerk, with a copy to Lewin, reflecting his change of address. This letter was dated July 6, 2003, but was not filed with the clerk's office until August 21, 2003.[5] On August 16, 2003, Lewin sent a letter to Farnsworth and the Milam County District Clerk giving her new address in New Jersey and indicating that she had moved from her parents' home as required by the original SAPCR order. This letter

---

**4.** The order specifically divided possession of the child as such:

> From October 14, 2002 until November 2, 2002 at 5:00 p.m., Brenda Lee Lewin shall have possession of the child . . . .
> From November 2, 2002 . . . until December 14, 2002 . . ., Robert George Farnsworth shall have possession of the child . . . .
> From December 14, 2002 . . . until January 4, 2003 . . ., Brenda Lee Lewin shall have possession of the child . . . .

From January 4, 2003 . . . until April 5, 2003 . . ., Robert George Farnsworth shall have possession of the child . . . .
From April 5, 2003 . . . until July 5, 2003 . . ., Brenda Lee Lewin shall have possession of the child . . . .
From July 5, 2003 . . . until the commencement of the periods of possession that commence on September 1, 2003 . . . Robert George Farnsworth shall have possession of the child . . . .

**5.** The clerk's record indicates that the letter was received on August 21, 2003.

was received by the district clerk on August 25th.

On August 26, 2003, Farnsworth filed suit in Canada to modify the custody arrangements, alleging that Lewin no longer wanted the child and that it appeared the child had been abused under her care. Attached to the Canadian suit was an affidavit by Farnsworth verifying the petition in which Farnsworth identifies himself, as translated in the record, as "residing and domiciled at 7751 Avrille Avenue, Apt. # 8, Anjou, district of Montreal, Province of Quebec." In violation of the original SAPCR order, Farnsworth did not return the child to Lewin on September 1, 2003. His attorney sent a letter to the Milam County District Clerk's Office informing the Texas Court that:

> a proceeding has been filed in the Quebec Superior Court concerning the custody of the minor child [T.M.F.]. This proceeding was filed by our client Robert George Farnsworth who is now a resident of the province of Quebec, more precisely at 7751 Avrille Ave., apt:# 8, Anjou, Quebec.
>
> As a matter of fact, the mother and defendant in the proceeding, Brenda Lee Lewin has also moved out of your jurisdiction and is now living at 54 River Road, Wayne, New Jersey, 07470, USA.

With this letter, Farnsworth's Canadian attorney filed the petition, in French, and an affidavit demonstrating that Lewin had been served in the Canadian modification suit.

■ After Farnsworth wrongfully retained the child past September 1, 2003, Lewin filed an application under the Hague Convention [6] seeking the return of the child. Farnsworth sought to retain the child on the grounds that there was evidence of abuse and that Lewin had acquiesced in his retention of the child. In November, the Canadian court conducted a three-day evidentiary hearing on Lewin's application. At the conclusion of the hearing, the court found that Farnsworth had unlawfully refused to return the child to Lewin, Lewin had not acquiesced in Farnsworth's continued possession of the child, and that Farnsworth's evidence of possible abuse was inconclusive and not sufficient grounds for failing to order the return of the child in accordance with the terms of the original SAPCR order. The court ordered that the child be returned to Lewin by noon the next day, November 26, 2003, and that Farnsworth pay Lewin $10,066.57 in Canadian funds for attorney's fees and travel expenses necessary to obtain the Hague Convention order.

The next day, Farnsworth did not return the child to Lewin as ordered, but rather fled with T.M.F. without giving notice of their whereabouts to Lewin. Although a warrant was issued in Canada for Farnsworth's arrest, he had already crossed the international border by the time the Canadian police attempted to enforce it. On December 3, 2003, Farnsworth filed a motion in Milam County to modify the parent-child relationship alleging that the child had been neglected by Lewin and abused physically and sexually.

---

**6.** The Hague Convention on the Civil Aspects of International Child Abduction was established in 1980 to provide a remedy for international child abductions. *Saavedra v. Schmidt,* 96 S.W.3d 533, 542 (Tex.App.—Austin 2002, no pet.) (citing preamble to Hague Convention). Congress enacted the Hague Convention through the International Child Abduction and Remedies Act ("ICARA"). 42 U.S.C.A. §§ 11601–11610 (West 1995). The ICARA grants concurrent jurisdiction to state and federal courts to determine the merits of an abduction claim under the Convention, but not the merits of the underlying custody battle. *Id.* § 11603(a); *In re Vernor,* 94 S.W.3d 201, 207 (Tex.App.—Austin 2002, no pet.); *England v. England,* 234 F.3d 268, 271 (5th Cir.2000).

He requested that he be given the right to designate the child's primary residence and sought a temporary order restricting Lewin's right to visitation only in Milam County. A temporary ex parte order, signed by the trial court, granting the relief requested in the motion was filed with the Milam County District Clerk less than an hour after the motion was filed. That afternoon, Lewin filed a motion to vacate the temporary order and for a writ of attachment, citing the Hague Convention order that Farnsworth return the child to her on November 26.

Lewin also filed a suit to enforce the Hague Convention order and to obtain custody of the child in New Jersey on December 4, 2003. Relief was denied on December 5, 2003 by the New Jersey Court in a handwritten order stating:

> All relief requested is denied. Submissions by [plaintiff] indicate that Texas was/is the home state of [the child]. Jurisdiction is with the State of Texas until further order of that court indicating that they are specifically changing same.

A hearing was held in Milam County on December 11, 2003, in which Lewin and Farnsworth both testified. Lewin argued at the hearing that the Hague Convention order commanding Farnsworth to return the child was enforceable and that Milam County did not have jurisdiction to modify custody because the Canadian court had determined in November that both Lewin and Farnsworth, and their child, no longer resided in Texas. Farnsworth claimed residency in Texas and argued that Lewin failed to meet the provisions of the original SAPCR order which allowed her to continue to determine the primary residence of the child only if she "ceases to reside with her parents and obtains a residence of her own by September 1, 2003." Farnsworth insisted that, by moving in with her fiancé, Lewin had not established a residence of

her own. The Milam County court entered another temporary order on December 12, confirming Farnsworth as the managing conservator with the right to designate the primary residence of the child and enjoining Lewin from visiting with the child outside of Milam County. Findings of fact were signed by the court on January 2, 2004, and Lewin's motion for rehearing was denied on March 3, 2003. This petition for a writ of mandamus followed.

## DISCUSSION

In considering Lewin's petition, we must navigate the multitude of jurisdictional questions that arise when parents separate across state and international boundaries and when children are wrongfully secreted from one jurisdiction to another. These issues of jurisdiction are governed by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), as adopted in Chapter 152 of the Texas Family Code, and the Hague Convention on the Civil Aspects of International Child Abduction. *See* Tex. Fam.Code Ann. §§ 152.101–.313 (West 2002); (Hague Convention on the Civil Aspects of International Child Abduction, opened for signature Oct. 25, 1980, T.I.A.S. No. 11,670, reprinted in 51 Fed. Reg. 10,494 (1986)) (hereafter Hague Convention). Our analysis of the jurisdictional issues in the case must be conducted in light of the overarching purposes of both the UCCJEA and the Hague Convention: to prevent conflicting jurisdiction and relitigation of child custody issues and to deter child abduction. *See In re McCoy*, 52 S.W.3d 297, 302 (Tex.App.—Corpus Christi 2001, no pet.) (stated purposes of the UCCJEA include avoiding jurisdictional competition between courts of different states, discouraging continuation of controversies over child custody, and deterring abductions and unilateral removals of children undertaken to obtain custody

awards); *In re Vernor*, 94 S.W.3d 201, 207 (Tex.App.—Austin 2002, no pet.) ("The purpose of the Convention is to inhibit the abduction of children across international borders by establishing procedures for their prompt return to their country of 'habitual residence.' ").

## Mandamus

■ As a preliminary matter, we note that mandamus is an appropriate vehicle to challenge the temporary orders in this case. Mandamus relief is available only if a court clearly abused its discretion and no adequate remedy is available by appeal. *In re Southwestern Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex.2000). Mandamus is proper if a court acts without subject-matter jurisdiction. *Id.; In re Barnes*, 127 S.W.3d 843, 847 (Tex.App.—San Antonio 2003, no pet.). In recognition of the unavailability of appeal of temporary orders and the demand for speedy resolution of child custody matters, Texas courts have repeatedly considered challenges to a court's improper assertion of jurisdiction in child custody matters through a petition for a writ of mandamus. *See Proffer v. Yates*, 734 S.W.2d 671, 672 (Tex.1987); *Barnes*, 127 S.W.3d at 847 (citing *Little v. Daggett*, 858 S.W.2d 368, 369 (Tex.1993)); *McCoy*, 52 S.W.3d at 301. It would be a tremendous burden on child custody litigants to be forced to comply with temporary orders regarding such matters as child support, visitation, and custody with no right of appeal when the issuing court

may have no jurisdiction over the matter. *McCoy*, 52 S.W.3d at 302.[7]

## The Hague Convention

■ In considering Lewin's petition, we are compelled to first examine the appropriateness of the Milam County district court's assertion of jurisdiction to enter temporary orders modifying the original SAPCR order without immediately enforcing the Canadian order requiring Farnsworth to return the child to Lewin pursuant to the Hague Convention. The Milam County court did not expressly rule on Lewin's motion for a writ of attachment seeking enforcement of the Hague Convention order. Instead, it characterized the Hague Convention order as an enforcement of the original SAPCR order and apparently decided that the Canadian court wrongly interpreted that order. The Hague Convention, however, is not merely a device to enforce custody determinations. Rather, it is a set of rules that allows the courts of different nations to work together to avoid the sort of forum shopping and self help engaged in by Farnsworth, regardless of the ultimate resolution of the underlying custody dispute.

■ The Hague Convention prioritizes the return of wrongfully removed or retained children over any other custody proceedings. Article 16 of the Hague Convention states:

> After receiving notice of a wrongful removal or retention of a child in the sense of Article 3,[8] the judicial or administra-

---

7. A plea to the jurisdiction has also been recognized as an acceptable challenge to a trial court's assertion of jurisdiction in a child custody determination. *See In re S.L.P.*, 123 S.W.3d 685, 687–88 (Tex.App.—Fort Worth 2003, no pet.); *In re Brilliant*, 86 S.W.3d 680, 684–85 (Tex.App.—El Paso 2002, no pet.).

8. Article 3 of the Hague Convention states that the removal or retention of a child is wrongful where:

> (a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been

tive authorities of the Contracting State to which the child has been removed or in which it [the child] has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention or unless an application under this Convention is not lodged within a reasonable time following receipt of notice.

Hague Convention, art. 16 (footnote added). The Hague Convention deters parental abductions by depriving the abductor's actions of any practical or juridical consequences, thereby eliminating the primary motivation for the abduction—to obtain an advantage in custody proceedings by commencing them in another country. *Holder v. Holder*, 305 F.3d 854, 860 (9th Cir.2002); *Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir.2001). "The Convention operates to restore the status quo as it existed before the wrongful removal of a child in a signatory nation." *Vernor*, 94 S.W.3d at 207 (citing *England v. England*, 234 F.3d 268, 271 (5th Cir.2000)); *Flores v. Contreras*, 981 S.W.2d 246, 248 (Tex.App.—San Antonio 1998, pet. denied).

When Farnsworth unlawfully avoided the Hague Convention order in Canada and fled to Milam County, he did precisely what the Hague Convention and Chapter 152 of the Texas Family Code were enacted to prevent. After declaring himself a resident of Quebec, Farnsworth had a valid custody suit pending in Canada seeking to modify the original SAPCR order. Under the Hague Convention, he was also permitted to litigate his concerns over the safety of his daughter's return to New Jersey to live with her mother. *See* Hague Convention, art. 13 (court not bound to order return of child when there is grave risk that return will expose child

to physical or psychological harm or otherwise place child in an intolerable situation). After a hearing, the Canadian court determined that there was no grave risk of harm to the child and ordered her return to Lewin. Dissatisfied with the Canadian court's decision, Farnsworth disobeyed the order, fled with the child across an international boundary where the warrant for his arrest could not be enforced, withdrew his custody proceeding, and sought to relitigate the same issues in Milam County. Both the language and the very purpose of the Hague Convention and Chapter 152 of the Family Code prohibit this sort of forum shopping and self help.

Once the Milam County trial court was presented with a valid order under the Hague Convention commanding the return of the child to Lewin in New Jersey, the court was obligated to enforce it. Article 16 of the Hague Convention prohibited the trial court from considering the merits of Farnsworth's modification motion before enforcing the Hague Convention order. *See* Hague Convention, article 16; *Duquette v. Tahan*, 252 N.J.Super. 554, 600 A.2d 472, 476–77 (App.Div.1991); *Becker v. Becker*, No. FD–14–14–90, 1989 N.J.Super. LEXIS 538, *6 (N.J.Super.Ct.App.Div.1989) ("[I]t is clear that the Convention would require the return of a child even though the requested State may have entered an order granting custody to the person having removed the child."); *Sheikh v. Cahill*, 145 Misc.2d 171, 546 N.Y.S.2d 517, 522 (N.Y.Sup.Ct.1989) (citing article 16 of Hague Convention and declining to make a determination as to custody). The trial court had notice of the Hague Convention order through Lewin's motion seeking a writ of attachment. At that point, the Texas court was obligated to enforce the order and return the parties

exercised but for the removal or retention . . . .

Hague Convention, art. 3.

to the factual status quo prior to Farnsworth's wrongful retention of the child in Canada and subsequent wrongful removal to Milam County. *See* Hague Convention, article 16; *Duquette,* 600 A.2d at 476–77; *Becker,* 1989 N.J.Super. LEXIS 538, at *6; *Sheikh,* 546 N.Y.S.2d at 522.

Furthermore, section 152.302 of the Texas Family Code provides that a court may enforce an order for the return of a child made under the Hague Convention on the Civil Aspects of International Child Abduction as if it were a child custody determination. Tex. Fam.Code Ann. § 152.302 (West 2002). Section 152.303 requires a Texas court to enforce a child custody determination of another state if that court had jurisdiction in conformity with the code and that determination has not been previously modified. *Id.* § 152.303. Unless a trial court issues a temporary emergency order pursuant to section 152.204 of the Texas Family Code, the trial court must enforce a child custody determination, including a Hague Convention order granting immediate physical custody of a child, and may not modify that order. *See* Tex. Fam.Code Ann. § 152.310(a) (West 2002); *Saavedra v. Schmidt,* 96 S.W.3d 533, 543 (Tex.App.—Austin 2002, no pet.) (upon finding that party is entitled to immediate physical custody of a child pursuant to a custody determination, "the court must award that party custody without relitigating the custody rights"). Because the trial court did not first return the child to Lewin, its consideration of Farnsworth's modification motion and entry of a temporary order on December 12, 2003 were contrary to the provisions of both the Hague Convention and the Texas Family Code. We therefore hold that the trial court abused its discretion in entering temporary orders relating to Farnsworth's custody suit instead of immediately enforcing the Hague Convention order.

**Jurisdiction**

Lewin's primary argument in seeking mandamus relief is that the temporary orders entered in Farnsworth's modification suit are void because the court lacked subject-matter jurisdiction over the case.

*Exclusive Continuing Jurisdiction*

The trial court heard extensive evidence on the issue of jurisdiction at the December 11, 2003 evidentiary hearing in Milam County. At the conclusion of the hearing, the trial court held that it had exclusive continuing jurisdiction over the child custody proceedings and issued a temporary order transferring the right to designate the child's primary residence from Lewin to Farnsworth. The court noted that the mere fact that all the parties had moved from the state did not deprive the court of its exclusive continuing jurisdiction. This was correct. A court's exclusive continuing jurisdiction does not vanish immediately once all the parties leave the state. Rather, exclusive continuing jurisdiction remains with the court that made the initial child custody determination unless:

(1) a court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent, have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

(2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

Tex. Fam.Code Ann. § 152.202 (West 2002). The trial court erred, however, in failing to recognize that section 152.202(a)(2) was satisfied when the Canadian court, which is considered to be a

court of another state, *see* Tex. Fam.Code Ann. § 152.105(a) (West 2002) ("a court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying this subchapter and subchapter C"), determined in November 2003 that Farnsworth, Lewin, and the child did not then presently reside in Texas. *See id.* § 152.202(a)(2).

The statute's use of the language "presently reside" is significant. The commissioner's comment to the UCCJEA explains:

> The phrase "do not presently reside" is not used in the sense of a technical domicile. The fact that the original determination state still considers one parent a domiciliary does not prevent it from losing exclusive, continuing jurisdiction after the child, the parents, and all persons acting as parents have moved from the state.

UCCJEA § 202, cmt., 9 U.L.A. 649, 674 (1999). As such, Farnsworth's arguments at the hearing and in his response to Lewin's petition for a writ of mandamus concerning his intent to return to Texas and the technical definition of residence in Canadian law are irrelevant. It is clear from the face of the Hague Convention order, which is considered a child custody determination, *see* Tex. Fam.Code Ann. § 152.302, that a court of another state had determined that both parents and the child had left Texas. The style of the Canadian order, as translated in the record, lists Farnsworth as "residing at 7751, Avrille Avenue, Apartment 8, Anjou, judicial district of Montreal Province of Quebec, Canada" and Lewin as "residing and domiciled at 54, River Road, Wayne, New Jersey, United States of America." The Canadian order included the following findings:

> [7] WHEREAS Plaintiff [Lewin] moved from her parents' house and established residence with her fiancé, Chistopher Friedrich, at 54 River Road, Wayne, New Jersey, on August 16, 2003;
>
> [8] WHEREAS in the exercise of his last possession period before Plaintiff established the child's primary residence, Defendant picked up the child at Plaintiff's parents' house … and brought her to Montreal to live with him in his mother's apartment;
>
> [9] WHERE unknown to Plaintiff he had established residence there after moving from Texas ….
>
> \* \* \* \* \* \*
>
> [17] WHEREAS in the absence of proof of an intolerable situation for the child were she to be returned to New Jersey, the Court considers that both the Texas judgment and the aforementioned Quebec Act respecting the Civil Aspects of International and Interprovincial Child Abduction require that any determination of her future custody or of access to her be decided by the competent authorities of the state of New Jersey;
>
> [18] WHEREAS it is accordingly in the best interest of the child that she return to Wayne, New Jersey, her primary residence determined by the Plaintiff in conformity with the Texas Judgment;
>
> \* \* \* \* \* \*
>
> [20] WHEREAS in view of the Defendant's unlawful refusal to return the minor child to her habitual residence, Plaintiff has proven $10,066.57 in Canadian funds of legal and traveling expenses which Defendant should compensate;
>
> \* \* \* \* \* \*
>
> [24] [The court] ORDERS the immediate return of the minor child,

[T.M.F.], *to her primary residence at 54 River Road, Wayne, New Jersey, said return to be effected by transferring child ... at 12:00 p.m., noon, Wednesday, November 26, 2003 ....*

Farnsworth's argument that the Hague Convention order was not a proper determination of the residency of the parties is undermined by the fact that he explicitly represented to the Canadian court that he was a resident of Canada.[9] Farnsworth swore out an affidavit in his Canadian suit in which he stated that he was a resident of Quebec. He made similar representations to the Milam County court, submitting a handwritten letter to the district clerk stating that he had "moved" to Canada, and his attorney filed a letter in Milam County informing the Texas court that Farnsworth "is now a resident of the province of Quebec." Having left Texas and represented that he is a resident of Quebec in the Canadian court, Farnsworth may not return to Texas and challenge the Canadian court's finding based on his own assertions. Moreover, the Milam County court's original SAPCR order recognized that Lewin resided in New Jersey, and that because Lewin had the right to establish the child's primary residence, the child was a resident of New Jersey as well. We hold that the Milam County district court lost exclusive continuing jurisdiction over this SAPCR. *See* Tex. Fam.Code Ann. § 152.202(b).

*Regaining Initial Jurisdiction*

██ Even though the trial court did not retain exclusive continuing jurisdiction, it could regain jurisdiction if it met the requirements *for initial child custody jurisdiction. See* Tex. Fam.Code Ann. § 152.202(b). The relevant provisions of section 152.201 governing a trial court's initial jurisdiction to make a child custody determination would demonstrate the trial court's jurisdiction if:

(1) [Texas] is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state; or

(2) a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 or 152.208, and:

(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships ....

*Id.* § 152.201(a) (West 2002). A child's "home state" is the "state in which the child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commence-

---

9. Contrary to Farnsworth's arguments advanced in his response, the residency findings in the Hague Convention order are not merely dicta. Although the technical domicile of the parties is not relevant to a determination under the Hague Convention, the court must determine the "habitual residence" of a child so that the court may correctly direct the return of the child. Hague Convention, arts. 11–16. The court here also had to determine the New Jersey residence of both Lewin and the child in the course of enforcing the original SAPCR order.

ment of a child custody proceeding." *Id.* § 152.102(7) (West 2002). A temporary absence of a parent is part of the consecutive period. *Id.*

Contrary to the New Jersey court's December 5, 2003 order denying relief in Lewin's suit to modify custody, Texas is not the "home state" of the child under the provisions of the Texas Family Code. At the time of the December 11, 2003 hearing in Milam County, the child had not lived in Texas for any period of time since April 2003. Moreover, the original SAPCR order granted Lewin the right to determine the child's primary residence. She chose New Jersey and at all relevant times, Lewin resided there with the child. The original SAPCR order clearly recognized New Jersey as the child's primary residence as it conditioned Lewin's continued right to determine the child's primary residence on their living within 40 miles of Wayne, New Jersey. The child lived in New Jersey beginning, at the very latest, when the child was returned to Lewin after visitation with Farnsworth on December 14, 2002. Although the child spent a significant amount of time outside of New Jersey during her visitation with Farnsworth, these visits to Texas and Canada were temporary absences from her primary residence in New Jersey.

In *Lemley v. Miller,* this Court considered a similar situation in which a child left Texas for eleven months during a parent's active military service in Germany. *See* 932 S.W.2d 284, 285 (Tex.App.—Austin 1996, no writ.). The child returned from Germany to Texas, and a suit for modifica-

tion was filed a month later. *Id.* Citing the temporary nature of the active military service placement in Germany and the child's return to the same home town in Texas, this court held that the child's eleven-month stay in Germany was a temporary absence. *Id.* at 286; *see also Maqsudi v. Maqsudi,* 363 N.J.Super. 53, 830 A.2d 929, 937–38 (Ch. Div.2002). As in *Lemley,* we decline to consider the time the child spent in Texas and Canada during visitation with Farnsworth, or the time while he wrongfully retained the child, as anything more than a temporary absence from New Jersey. *See Lemley,* 932 S.W.2d at 286. Time spent away from a state during a temporary absence is counted as time in the state for the purposes of determining a child's "home state." Tex. Fam.Code Ann. § 152.102(7). The child had lived in New Jersey, with temporary absences, for almost a year prior to the December 11, 2003 hearing, and therefore, the child's home state was New Jersey. Because New Jersey would have jurisdiction as the "home state" of the child, the Milam County trial court did not regain initial jurisdiction. *Id.* § 152.201(2).[10]

### *Unjustifiable Conduct*

 Regardless of other arguments concerning the Texas court's possible jurisdiction over the modification suit, Farnsworth's unjustifiable conduct—in wrongfully retaining the child in Canada beyond the September 1 deadline for returning her to Lewin and in abducting the child to avoid the Hague Convention order that he return her to Lewin at noon on November 26—deprived the Tex-

**10.** When a child's home state is outside of Texas, Texas may obtain initial jurisdiction only if the court with home state jurisdiction has "declined to exercise jurisdiction on the ground that a court of [the State of Texas] is the more appropriate forum to determine the custody of the child under Section 152.207 [Inconvenient Forum] or 152.208 [Jurisdic-

tion Declined by Reason of Conduct]." Tex. Fam.Code Ann. § 152.201(a)(3) (West 2002). Although the New Jersey court denied Lewin's custody suit, it wrongly decided that Texas appeared to be the child's home state, not that Texas was an inconvenient forum or that there had been unjustifiable conduct.

as court of subject-matter jurisdiction. *See id.* § 152.208. A court "shall decline to exercise its jurisdiction" if the court has jurisdiction "because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct." *Id.*[11] Declining jurisdiction under this provision of the family code is mandatory. *In the Interest of S.L.P.,* 123 S.W.3d 685, 689 (Tex.App.—Fort Worth 2003, no pet.). Even though Lewin's arguments concerning unjustifiable conduct were not presented to the trial court, jurisdictional issues are not waivable. *Lemley,* 932 S.W.2d at 286.

Farnsworth's actions in these proceedings demonstrate a pattern of unjustifiable conduct and epitomize the problems that Chapter 152 of the family code was enacted to curtail. From the beginning of this child custody dispute, Farnsworth began taking matters into his own hands. After his New Jersey court appearance in October 2002, Farnsworth deceived Lewin and fled with the child by car to Texas. Later, Farnsworth again decided to preempt the role of the courts by unlawfully retaining the child in Canada based on his personal interpretation that Lewin had violated the original SAPCR order, rather than obtaining judicial sanctions for his desired change in the custody arrangements. Farnsworth did seek judicial intervention from a Canadian court, obtaining its jurisdiction by asserting his change of residence to Quebec. Then, unsatisfied with that court's ruling that he must return the child to Lewin, he again flouted a court order and hastily transported the child across the international border to avoid an arrest warrant for abducting the child. Seeking a friendlier forum, Farnsworth reasserted his Texas residency and sought to modify the custody order in Milam County raising the same allegations of abuse that had been considered and rejected by the Canadian court.

 Courts simply do not permit parents to kidnap children. The statutory framework of the UCCJEA, as adopted in Chapter 152 of the Texas Family Code, was "*particularly* designed to deter parents from abducting children for the purposes of obtaining custody awards." *In the Interest of Carpenter,* 835 S.W.2d 760, 762 (Tex.App.—Amarillo 1992, no writ); *see also Saavedra,* 96 S.W.3d at 540; *McCoy,* 52 S.W.3d at 302; *Cunningham v. Cunningham,* 719 S.W.2d 224, 227 (Tex.App.—Dallas 1986, writ dism'd). To allow a parent to deliberately secrete a child to Texas for the purpose of obtaining a child custody determination in the state would make a mockery of the statute. *Siler v. Storey,* 677 S.W.2d 504, 507 (Tex.1984); *Carpenter,* 835 S.W.2d at 762; *Cunningham,* 719 S.W.2d at 228. Furthermore, a primary purpose of the UCCJEA is to avoid the relitigation of child custody issues. *See In re K.L.V.,* 109 S.W.3d 61, 66 (Tex.App.—Fort Worth 2003, pet. denied); *In re Brilliant,* 86 S.W.3d 680, 684 (Tex.App.—El Paso 2002, no pet.); *McCoy,* 52 S.W.3d at 302.

Farnsworth took the child from Canada to Texas for the purpose of obtaining another forum in which to litigate the custody issues he had already pursued in Canada. Had Farnsworth returned the child to Lewin in New Jersey on September 1, 2003, or even returned the child to her on November 26 as ordered by the Canadian court, the status quo would have placed him in Canada and Lewin in New Jersey. Farnsworth and the child's presence in

---

**11.** The only exceptions to this provision are when the parents have acquiesced to the court's exercise of jurisdiction or when a court of another state otherwise having jurisdiction finds Texas a more appropriate forum under section 152.207 of the code. *See* Tex. Fam.Code Ann. § 152.208 (West 2002). Neither exception applies to this case.

Texas—the basis for the trial court's exercise of jurisdiction—was wholly due to the abduction.[12] Even if there were an independent basis for the trial court's jurisdiction over Farnsworth's modification suit under Chapter 152 of the Texas Family Code, the trial court was required to decline its jurisdiction based on Farnsworth's wrongful retention and later abduction of the child in search of a more favorable forum. *See* Tex. Fam.Code Ann. § 152.208(a); *S.L.P.*, 123 S.W.3d at 689.

The Milam County district court did not have subject-matter jurisdiction over Farnsworth's motion to modify child custody because it lost exclusive continuing jurisdiction and did not regain initial jurisdiction under the provisions of chapter 152 of the Texas Family Code. *See* Tex. Fam. Code Ann. §§ 152.201, .202. Because the trial court lacked subject-matter jurisdiction, the temporary orders issued by the trial court are void. *See Barnes*, 127 S.W.3d at 847; *In re Oates*, 104 S.W.3d 571, 575 (Tex.App.—El Paso 2003, no pet.).

## CONCLUSION

Having found that the trial court lacked subject-matter jurisdiction to enter temporary orders and that it abused its discretion in failing to enforce the Hague Convention order, we conditionally grant the writ of mandamus. The trial court made an admirable attempt to navigate the complexities of jurisdiction presented by the circumstances of this custody dispute. We write to give guidance to trial courts who will more often be faced with such unfamiliar problems as the interplay between a Hague Convention order and the Texas Family Code, including the UCCJEA. The writ will issue only in the event that

the trial court does not vacate its temporary orders, dismiss Farnsworth's motion to modify child custody and enforce the Hague Convention order, which is all the Milam County district court now has jurisdiction to do.

12. Had Farnsworth returned the child on September 1, 2003 or on November 26, 2003 and then filed his modification suit in Milam County, the court would have determined that it no longer had exclusive continuing jurisdiction because all of the parties had left the state. *See* Tex. Fam.Code Ann. § 152.202(a) (West 2002).